The STATE of Ohio, Appellee,

v.

BEEHIVE LIMITED PARTNERSHIP, Appellant.

[Cite as *State v. Beehive Ltd. Partnership* (1993), 89 Ohio App.3d 718.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63121.

Decided Aug. 2, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *A. Steven Dever* and *John Clough,* Assistant Prosecuting Attorney, for appellee.

*Jacqueline A. Johnson,* for appellant.

Krupansky, Judge.

Defendant-appellant Beehive Limited Partnership ("Beehive") appeals from its convictions for forgery in violation of R.C. 2913.31, uttering in violation of R.C. 2913.31 and tampering with records of the Cuyahoga Metropolitan Housing Authority ("CMHA") in violation of R.C. 2913.42.

Beehive was indicted by the Cuyahoga County Grand Jury with five co-defendants on October 24, 1991 following an investigation by the United States Inspector General and Cuyahoga County Prosecutor of influence peddling, corruption of public officials and other wrongdoing in connection with two local housing projects. The eleven charges against the six defendants stemmed from the acquisition of two abandoned school buildings from the Cleveland Board of Education (the "BOE"), conversion of the two buildings into public subsidized housing with funds obtained from the Ohio Housing Finance Agency ("OHFA") and operating subsidies from the U.S. Department of Housing and Urban Development ("HUD"). Administrative approval from the CMHA was necessary to obtain both the OHFA funding and HUD rent subsidies for the two projects.

The charges against the two defendant organizations, Beehive and Doan Limited Partnership ("Doan"), involved their acquisition of millions of dollars in public funding for projects to convert and operate the former school buildings as apartment units at Lee Road and Miles Avenue and East 105th Street and Superior Avenue. The charges against the remaining four individual defendants, viz., Walter Burks, Kathleen Patton, Robert Clinkscale and Casmira Discipio, stemmed from their involvement in various phases of government administrative approval of the projects. Walter Burks, Kathleen Patton and others were general partners in Beehive when the Beehive project commenced; Clinkscale and Discipio were employees of the BOE involved in the original sale of the two school buildings for development.

The first five charges in the indictment related to financing for the two projects obtained from the OHFA through a bond issue insured by FHA insurance approved by CMHA. The first three counts of the indictment charged Beehive, Doan and Walter Burks as follows, viz.: (1) grand theft from OHFA from January 1, 1985 to June 17, 1986 in violation of R.C. 2913.02; (2) securing writings from OHFA by deception during the same period in violation of R.C. 2913.43; and (3) bribery of CMHA employee James F. Anderson from January 1983 to June 10, 1986 in violation of R.C. 2921.02. Counts four and five alternatively charged Beehive and Walter Burks, in addition to Doan and Walter Burks, with securing writings from CMHA and/or HUD during 1985 in violation of R.C. 2913.43.

Charges seven through nine of the indictment related to rent subsidies for the converted Beehive apartment units approved by CMHA pursuant to a federal HUD program. Count six charged Kathleen Patton with the forgery of a power of attorney form in connection with the Beehive project in violation of R.C. 2913.31. Count seven charged Beehive and Walter Burks with the forgery of the same power of attorney form in violation of R.C. 2913.31. Count eight of the indictment charged Beehive and Walter Burks with uttering the forged power of

attorney to CMHA in violation of R.C. 2913.31. Count nine of the indictment charged Beehive, Walter Burks and Kathleen Patton with tampering with the records of CMHA and/or HUD in connection with the power of attorney in violation of R.C. 2913.42.

Finally, charges ten and eleven of the indictment related to the original acquisition of the school buildings from the BOE prior to their conversion to apartment units. These two counts charged co-defendants Robert Clinkscale and Casmira Discipio with theft in office from the BOE in violation of R.C. 2921.41 and receiving improper compensation in violation of R.C. 2921.43. Clinkscale pleaded guilty to the charges in counts ten and eleven and the same two charges against Discipio were severed for separate trial.

The case against Beehive, Doan, Walter Burks and Kathleen Patton proceeded to a jury trial on the nine counts against them commencing October 30, 1991. The jury returned a verdict following a lengthy trial on November 27, 1991 finding Beehive guilty of the following three offenses, *viz.*: (1) forgery of the power of attorney as charged in count seven in violation of R.C. 2913.31; (2) uttering the power of attorney as charged in count eight in violation of R.C. 2913.31; and (3) tampering with records as charged in count nine in violation of R.C. 2913.42. Beehive was acquitted of the remaining four charges against it and co-defendants Doan, Walter Burks and Kathleen Patton were acquitted of all charges against them. The trial court thereafter entered judgment on the jury verdict and fined Beehive a total of $35,000 on December 6, 1991 as follows, *viz.*: (1) $10,000 for forgery in violation of R.C. 2913.31; (2) $10,000 for uttering in violation of R.C. 2913.31; and (3) $15,000 for tampering with records in violation of R.C. 2913.42.

Beehive filed on December 11, 1992 a timely post-trial motion for judgment of acquittal or, in the alternative, a new trial. Beehive's motion argued (1) the prosecution presented insufficient evidence of Beehive's "purpose to defraud" the CMHA required to sustain its jury convictions on the three charges, and (2) the $15,000 fine on its conviction for tampering with records was improper since the charge of tampering with records constituted an allied offense to its forgery and uttering convictions. The trial court denied defendant's post-trial motion for judgment of acquittal or new trial in an order journalized December 27, 1991. Beehive thereafter filed a timely notice of appeal January 23, 1992 from the trial court's judgment of conviction and denial of its motion for acquittal or new trial.

Defendant's first assignment of error follows:

"The court erred in denying the defendant's Rule 29(C) motion for judgment of acquittal or in the alternative Rule 33(B) motion for judgment of acquittal [*sic*, new trial] because where a partner is acquitted of all criminal wrongdoing on

behalf of the partnership, the partnership can not be convicted of the same criminal wrongdoing."

Defendant's first assignment of error lacks merit.

■ Beehive contends that the prosecution presented insufficient evidence to support its three convictions and the trial court improperly denied its post-trial motion for judgment of acquittal or for a new trial. Beehive cites R.C. 2901.23 for the first time on appeal and claims that its jury convictions for forgery, uttering and tampering with records are inconsistent with the acquittal of defendant's sole general partner Walter Burks on the same charges.

R.C. 2901.23 governs the criminal liability of "organizations," defined by R.C. 2901.23(D) to include limited partnerships such as Beehive in the case *sub judice*, and provides in pertinent part as follows:

"(A) An organization may be convicted of an offense under any of the following circumstances:

" * * *

"(4) If, acting with the kind of culpability otherwise required for the commission of the offense, its commission was authorized, requested, commanded, tolerated, or performed by the board of directors, trustees, *partners, or by a high managerial officer, agent, or employee acting in behalf of the organization and within the scope of his office or employment.*" (Emphasis added.)

However, the record demonstrates Beehive failed to raise this specific issue in the trial court and, therefore, any such claim of error on appeal is deemed to be waived and cannot be raised for the first time on appeal. See *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. As noted above, Beehive's post-trial motion questioned only the sufficiency of the evidence to establish its criminal "purpose to defraud" CMHA supporting Beehive's three convictions. Beehive did not cite R.C. 2901.23, raise any claim that the criminal acts forming the basis for its liability were not performed by its "partners, or by a high managerial officer, agent or employee" or otherwise challenge the sufficiency of the evidence to establish the criminal acts were authorized by Beehive.

■ Beehive contends that its forgery, uttering and tampering convictions were improper since "[t]he crimes clearly require an individual actor" or "that an individual was guilty," but that neither of the two individuals charged with the same offenses was convicted in the case *sub judice*. However, it is well established that a single person need not commit all the criminal conduct when the actor is in complicity with another to commit the offense. See *State v. Bender* (1985), 24 Ohio App.3d 131, 24 OBR 202, 493 N.E.2d 552. Under these principles, an individual employee may be convicted of a crime while cooperating

with an organization which the individual could not possibly commit alone. *State v. Katz* (1962), 117 Ohio App. 348, 24 O.O.2d 113, 192 N.E.2d 203. Beehive's related contention that it does not constitute a person capable of acting in complicity with others is unpersuasive. Beehive constitutes a "person" under the general definitions set forth in R.C. 1.59(C) as follows:

" 'Person' includes an individual, corporation, business trust, estate, trust, partnership and association."

R.C. 2923.03(F) authorizes a person such as Beehive to be indicted for complicity to commit criminal offenses by charging in terms of the principal offenses as in the case *sub judice.* In this context, R.C. 2923.03(B) specifically recognizes the acquittal of one participant of a criminal offense does not affect the prosecution of an accomplice as follows:

"It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." See *State v. Graven* (1977), 52 Ohio St.2d 112, 6 O.O.3d 334, 369 N.E.2d 1205.

■ We note that even if Beehive had properly preserved and raised this claim in the trial court, Beehive has failed to demonstrate the trial court erred by refusing to enter a judgment of acquittal in its favor on the three charges due to the insufficiency of the evidence.

The standard governing claims that a conviction is not supported by sufficient evidence has been summarized as follows:

"As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

The standard governing post-judgment motions for judgment of acquittal pursuant to Crim.R. 29(C) is identical to the standard governing motions made during the course of the trial pursuant to Crim.R. 29(A). *State v. Basista* (Mar. 22, 1990), Cuyahoga App. No. 56720, unreported, 1990 WL 32603; *State v. McKnight* (June 22, 1989), Cuyahoga App. Nos. 55030 and 55416, unreported, 1989 WL 69396.

In addition, Beehive has failed to file a complete verbatim transcript of or other adequate record of the evidence presented by the parties at trial. Nevertheless, a review of the partial transcript reveals sufficient evidence, when viewed in the

light most favorable to the prosecution, to support the conclusion that several persons participated in the criminal conduct on behalf of Beehive to warrant Beehive's convictions on the three charges. As noted above, Beehive was charged and convicted by the jury of the following three offenses, *viz.*:

I. Forgery of a power of attorney in violation of R.C. 2913.31, which states:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:

"(1) Forge any writing of another without his authority;

"(2) Forge any writing so that it purports to be genuine when it is actually spurious, or to be the act of another who did not authorize the act, or to have been executed at a time or place with terms different from what was in fact the case, or to be a copy of an original when no such original existed[.]"

II. Uttering the same power of attorney in violation of R.C. 2913.31, which states:

"(3) Utter, or possess with purpose to utter, any writing which he knows to have been forged."

III. Tampering with records of CMHA in violation of R.C. 2913.42, which states:

"(A) No person, knowing he has no privilege to do so, and with purpose to defraud or knowing that he is facilitating a fraud, shall do any of the following:

"(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, data or record[.]"

Beehive's convictions for these three offenses resulted from its efforts to improperly obtain rent subsidy payments from CMHA. The record demonstrates that Beehive was originally formed on or about July 25, 1983 with the following four general and identical limited partners, *viz.*: (1) Walter Burks; (2) Kathleen Patton; (3) Michael White; and (4) Mary Forbes. On October 21, 1983, each of these four individuals signed an Agreement to Enter into Housing Assistance Payment Contract (the "Agreement") on behalf of Beehive (the "Owner") in connection with the project for the purpose of obtaining rent subsidy payments from CMHA (referred to as "Public Housing Authority" or "PHA"). Paragraph 1.13 of the Agreement specifically prohibited the assignment by any general partner without the prior written consent of CMHA of its interest in the Agreement or subsequent Housing Assistance Payment Contract (the "Contract") as follows:

"(a) The Owner [Beehive] agrees that the Owner has not made and will not make any transfer in any form, including any sale or assignment, of this Agreement or the Contract without the prior written consent of the PHA

[CMHA].  A change in ownership in the Owner, such as stock transfer of the interest of a limited partner, is not subject to the provisions of this section. Transfer of the interest of a general partner is subject to the provisions of this section."

Nevertheless, without disclosure to or prior approval from CMHA, Beehive subsequently underwent a series of at least four transactions designed to change its partnership structure from April 1984 through 1985.  CMHA rehabilitation supervisor Mark Recko stated he believed the original partners remained general partners throughout the entire period of the approval process since none of the general partners informed him of any changes despite their obligation to do so. Recko stated that he continued to deal with Beehive, Walter Burks and Michael White accordingly.

Documents obtained during the course of the investigation revealed that original general partner Mary Forbes executed documents to withdraw as general partner and become only a limited partner on April 5, 1984.  Thereafter on December 31, 1984, original general partners Kathleen Patton and Michael White executed documents to assign their general and limited partnership interests to Burks Development Corporation in return for an assignment of a development fee from the Burks Development Corporation.  As a result, Walter Burks and Burks Development Corporation were listed as the sole remaining general partners as of December 31, 1984, and Burks Development Corporation was listed as the sole limited partner.

Burks Development Corporation thereafter executed documents to transfer its limited partnership interests to four members of the Walter Burks family on January 23, 1985.  Finally, Burks Development Corporation executed documents to withdraw as general partner and new limited partners were listed sometime in early 1985.  All the above transactions were accomplished without the consent, approval or even notice to CMHA as required by the Contract.  Walter Burks was ultimately listed as the sole remaining general partner in Beehive prior to May 1985.  The limited partnership interests were syndicated to others.

However, for Beehive to finally obtain the rent subsidy payments from CMHA after converting the school buildings to apartment units, Beehive was required by CMHA to execute the final Housing Assistance Payments Contract (the "Contract").  The record demonstrates that Walter Burks alone as general partner executed the Contract dated May 15, 1985 on behalf of Beehive without disclosing or obtaining approval for any of these changes in Beehive's general partnership structure.  Paragraph 1.18 of the Contract contained a similar provision concerning the change in general partnership interests to that in the former Agreement as follows:

"(a) The Owner [Beehive] has not made and agrees not to make any transfer in any form of this Contract or the property without the prior written consent of the PHA [CMHA]. A change in ownership in the Owner, such as stock transfer of the interest of a limited partner, is not subject to the provisions of this section. Transfer of the interest of a general partner is subject to the provisions of this section."

Prior to the execution of the Contract, CMHA rehabilitation supervisor Mark Recko had requested additional documentation indicating approval by the other general partners in Beehive since he did not approve of Walter Burks as general partner alone entering into the Contact on behalf of Beehive. As a result of his action, Recko received a forged general power of attorney form, purporting to have been executed May 14, 1985 by defendant Kathleen Patton and Michael White as general partners of Beehive granting Walter Burks authority to enter into the Contract on their behalf as general partners in Beehive, despite the fact they ceased to be general partners four and one-half months prior thereto on December 31, 1984.

The power of attorney stated in pertinent part as follows:

"We, the undersigned members of the Beehive Limited Partnership, 16912 Miles Avenue, Cleveland, Cuyahoga County, Ohio, do hereby appoint Walter A. Burks, 3300 Warrensville Center Road, Shaker Heights, Ohio our true and lawful attorney-in-fact, for us and in our name, place, and stead, and for our use and benefit, to manage, control, and take charge of our business as the majority and controlling stockholder in the Beehive Limited Partnership, located at 16912 Miles Avenue, Cleveland, Ohio 44128, and being in the County of Cuyahoga, and to do everything necessary to carry on and continue the affairs of such business * * *."

Documents recorded with the county recorder's office discovered during the investigation concerning Beehive indicated that neither Kathleen Patton nor Michael White were in fact general partners of Beehive on May 14, 1985 as falsely recited in the power of attorney form. Their interests as general partners were transferred by Kathleen Patton and Michael White to Burks Development Corporation on December 31, 1984. Dr. Phillip Bouffard, an expert forensic examiner, testified that Kathleen Patton personally signed her name to the false power of attorney form, but Michael White's signature was forged. The power of attorney form was typed and purported to be witnessed by Deborah Lee, a secretary of Burks Development Corporation, and by Trennice Richardson, a secretary for Burks Electric Corporation. The power of attorney was notarized by Iris Anderson, an employee of Burks Electric Corporation.

The forged power of attorney form was thereafter submitted to CMHA rehabilitation supervisor Mark Recko on May 15, 1985 in connection with the

execution of the Contract to obtain subsidy payments for Beehive along with a cover letter dated May 14, 1985 executed by "Walter Burks, president" on letterhead from Burks Development Corporation.

The jury could reasonably conclude from this evidence that Beehive purposely, with specific intent to defraud, either as principal or as an accomplice, solicited, procured, conspired, aided, abetted or caused another person to commit, the three offenses of which it was convicted, *viz.*: (1) forgery of the power of attorney in violation of R.C. 2913.31, (2) uttering the same power of attorney to CMHA in violation of R.C. 2913.31, and (3) tampering with the records of CMHA in violation of R.C. 2913.42.

Contrary to Beehive's argument, the jury was not required to convict Walter Burks, Beehive's sole general partner listed in documents filed with the county recorder's office as of April 1985 of any offense personally to warrant imposing liability against Beehive. The record demonstrates CMHA was not informed of the withdrawal or substitution of any of Beehive's general partners prior to authorizing the rent subsidy payments. R.C. 1782.15 specifically provides that documents filed by a limited partnership with the county recorder's office do not constitute notice of the identity of the general partners. The failure to provide actual notice of withdrawal by a general partner is clearly sufficient to impose liability under partnership and agency principles. See *Baltzell–Wolfe Agencies, Inc. v. Car Wash Investments* (1978), 58 Ohio App.2d 70, 12 O.O.3d 219, 389 N.E.2d 517. As a result, the jury could conclude any of Beehive's original general partners, agents or employees, who were actively involved but not indicted, including Michael White or Burks Development Corporation, committed or participated in these crimes on behalf of Beehive within the scope of authority granted by Beehive. Consequently, even if Walter Burks constituted the sole general partner when the acts of forgery, uttering and tampering occurred as Beehive now contends, there was sufficient evidence presented to conclude the former general partners remained "high managerial officers, agents or employees" of Beehive at the time of the criminal conduct to warrant imposing liability against Beehive.

Beehive has failed to demonstrate any inconsistency in the jury verdicts convicting it of these three charges and acquitting Kathleen Patton and Walter Burks individually of the same charges against them. As noted above, R.C. 2923.03(B) specifically provides that acquittal of a principal offender does not constitute a defense to a criminal prosecution against an accomplice. Moreover, neither Burks Development Corporation nor Michael White was indicted personally on any charges which were attributable to Beehive based on their agency relationship. The Ohio Supreme Court noted succinctly in this context as follows:

"The issue at trial was not the absent principal's guilt but rather appellant's guilt." *State v. Graven, supra,* 52 Ohio St.2d at 116, 6 O.O.3d at 336, 369 N.E.2d at 1208.

Beehive's reliance on *State v. Wintersong Village of Delaware, Inc.* (1990), 69 Ohio App.3d 552, 591 N.E.2d 291, to support its argument to the contrary is misplaced for several reasons. First, as noted above, Beehive failed to properly raise any argument concerning the scope of organizational liability under R.C. 2901.23 in the trial court in the case *sub judice.* Moreover, regardless of the validity of *Wintersong* under the facts of that case, the facts of the case *sub judice* are readily distinguishable. Contrary to the rather limited recitation of facts in *Wintersong,* the record *sub judice* demonstrates the existence of other high managerial persons, besides the acquitted individual defendants, who were not indicted but were actively involved in the criminal conduct sufficient to warrant imposing liability on the organization. Finally, *Wintersong* did not cite prior contrary authority from the same district concerning the effect of inconsistent jury verdicts. Compare *State v. Woodson* (1985), 24 Ohio App.3d 143, 24 OBR 231, 493 N.E.2d 1018.

█ Assume *arguendo* the verdicts of guilt against Beehive and acquitting the two individual defendants are inconsistent, this does not establish the evidence was insufficient to sustain Beehive's jury convictions. The fact that a jury returns inconsistent verdicts on several charges submitted to it does not demonstrate the evidence was insufficient as a matter of law to support the conviction or entitle the convicted defendant to be discharged or to obtain a new trial. See *United States v. Powell* (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461, and *State v. Woodson, supra.* The Supreme Court in *Powell* recognized this principle in the analogous context of inconsistent verdicts against a single individual on predicate and compound offenses, stating as follows:

" * * * The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, * * * inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on a compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. *It is equally possible that the jury, convinced of guilt, properly reached its conclusions on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.* But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing * * *.

"Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and

the fact the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." (Emphasis added.) *United States v. Powell, supra,* 469 U.S. at 65, 105 S.Ct. at 476–477, 83 L.Ed.2d at 468–469.

The Supreme Court concluded that appellate courts are bound to review such convictions, notwithstanding any inconsistency in the jury verdict, under traditional sufficiency of the evidence standards, stating as follows:

" * * * [A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with problems caused by inconsistent verdicts. Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *Id.* at 67, 105 S.Ct. at 478, 83 L.Ed.2d at 470.

Under the circumstances, Beehive has failed to demonstrate the trial court erred by refusing to enter a judgment of acquittal or granting a new trial on its three jury convictions in the case *sub judice.*

Accordingly, defendant's first assignment of error is overruled.

Defendant's second assignment of error follows:

"The court erred in denying the defendant's Rule 29(C) motion for judgment of acquittal or in the alternative Rule 33(B) motion for new trial on the grounds of abuse of discretion when the court failed to merge the counts of forgery and uttering in the sentencing of the Beehive Limited Partnership."

Defendant's second assignment of error lacks merit.

Defendant contends it was improperly fined $10,000 by the trial court on its conviction for forgery and $10,000 on its conviction for uttering since the two charges constitute allied offenses of similar import under R.C. 2941.25.

However, the record demonstrates that defendant failed to raise this particular allied offense statutory argument in the trial court prior to sentencing or any time thereafter. As noted above, Beehive's post-trial motion argued that its conviction for tampering with records constituted an allied offense to its forgery and uttering convictions. Beehive's brief on appeal has abandoned this contention and raises only the newly minted argument that its convictions for forgery and uttering constitute allied offenses. However, since the record demonstrates defendant did not raise this argument in the trial court, any claim of error in this context is deemed to be waived. See *State v. Comen, supra; State v. Griffiths* (Apr. 8, 1993), Cuyahoga App. No. 61980, unreported, 1993 WL 106952.

■ Moreover, even if defendant had properly preserved and raised this issue in the trial court, the record demonstrates defendant's forgery and uttering convictions were not allied offenses in the case *sub judice*. The Ohio Supreme Court has established a two-step test to determine whether multiple convictions constitute allied offenses of similar import pursuant to R.C. 2941.25(B). *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816; *State v. Griffiths, supra*. First, the elements of each offense must be compared to determine whether the commission of one offense will result in commission of the other. If the offenses satisfy this first requirement the court must proceed to the second step to determine whether the allied offenses were committed separately or with a separate animus so that defendant can be sentenced on each of the offenses. *Id.*

As noted above, defendant was charged and found guilty by the jury of forging the power of attorney, in violation of R.C. 2913.31(A), which states as follows:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:

"(1) Forge any writing of another without his authority;

"(2) Forge any writing so that it purports to be genuine when it is actually spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what was in fact the case, or to be a copy of an original when no such original existed."

Defendant was likewise charged with and convicted of uttering the same power of attorney in violation of R.C. 2913.31(A), which states as follows:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:

" * * *

"(3) Utter, or possess with purpose to utter, any writing which he knows to have been forged."

This court has repeatedly recognized in this context that forgery of an instrument in violation of R.C. 2913.31(A)(1) or (2) is not allied with uttering the same instrument in violation of R.C. 2913.31(A)(3) when the two offenses occur at different times in a sequence or are motivated by a different animus. *State v. Griffiths, supra*, at 12 (citing *State v. McGhee* [1987], 37 Ohio App.3d 54, 523 N.E.2d 864; *State v. Hunter* [1983], 12 Ohio App.3d 75, 12 OBR 273, 466 N.E.2d 183). The partial transcript filed by defendant in the case *sub judice* fails to exemplify any error. See *Maple Hts. v. Soper* (June 14, 1984), Cuyahoga App. Nos. 47684, 47685, 47686 and 47687, unreported, 1984 WL 5063.

As noted above, Beehive's conviction for forgery is based on a false power of attorney form bearing the names of co-defendant Kathleen Patton and Michael

White which purported to grant co-defendant Walter Burks authority to conduct the business of Beehive on their behalf for a period of one year following May 14, 1985. However, neither Kathleen Patton nor Michael White was in fact a general partner on May 14, 1985 as recited in the document. In addition, the signature of Michael White was forged. The forgery, by affixing the false signature of Michael White to the document or by Kathleen Patton purporting to authenticate a spurious writing, was clearly complete based on the testimony in the record at the latest when executed and notarized on May 14, 1985.

On May 15, 1985 the forged power of attorney dated May 14, 1985 was delivered or uttered to CMHA rehabilitation supervisor Mark Recko, who required additional authority in order to permit Walter Burks alone to execute the Contract. A cover letter dated May 14, 1985 from Burks Development Corporation signed by "Walter Burks, president" was also submitted to CMHA with the forged power of attorney. Defendant has not referred to any testimony in the partial transcript or other evidence indicating the forgery and uttering occurred simultaneously. Under the circumstances, based on these facts and defendant's failure to raise this particular issue in the trial court, we are unable to conclude the trial court erred or abused its discretion by refusing to merge defendant's forgery and uttering convictions.

Accordingly, defendant's second assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and STILLMAN, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.