OPINION
On November 17, 1997, appellant, Keith E. Read, was indicted by the Lake County Grand Jury for:
 1) Grand theft, for knowingly obtaining and exerting control over currency belonging to Accustaff, Inc., by deception, in violation of R.C. 2913.02;
 2) Grand theft, for knowingly obtaining and exerting control over currency belonging to Olsen Staffing Services, by deception, in violation of R.C. 2913.02;
 3) Grand theft, for knowingly obtaining and exerting control over currency belonging to Dawson Personnel Systems, by deception, in violation of R.C. 2913.02;
 4) Passing bad checks, for issuing or transferring a check to Accustaff, Inc. while knowing it would be dishonored, in violation of R.C. 2913.11;
 5) Forgery, for uttering a writing containing the forged signature of Gary Patton; and
 6) Passing bad checks, for issuing or transferring a check to Dawson Personnel Systems while knowing it would be dishonored, in violation of R.C. 2913.11.
The case proceeded to a jury trial, which was held on April 6, 7, and 8, 1998. At the trial, the evidence revealed that appellant, Richard Bohn and Steve McClinas bought Gary's Gourmet Foods ("Gary's"), a company that made frozen sauerkraut balls, from Gary Klaus on November 1, 1996. They negotiated a purchase price of $50,000, which included a $10,000 down payment and $500 a month thereafter until the purchase price was paid in full. Due to problems meeting sales projections, very few of the monthly payments were made and Gary Klaus eventually repossessed the equipment sold with the business.
In June 1997, a man calling himself Gary Patton called Accustaff, Inc., a temporary employment agency, to inquire about hiring an operations manager for Gary's Gourmet Foods. The alleged Mr. Patton gave the people he talked to the impression that he was the owner of Gary's. He said he was interested in hiring appellant, but wanted his payroll services handled through Accustaff. The arrangement they worked out involved Accustaff paying appellant and calculating the amounts deducted for taxes, workers' compensation, and other deductions, and then sending invoices to Gary's, to be paid upon receipt. Appellant filled out an application for Accustaff and led them to believe that he had no ownership interest in the company and indicated that Gary Patton was the owner. Eventually, Gary's hired additional employees through Accustaff.
Accustaff became worried because Gary's had not paid any of their invoices. They also were concerned when appellant filed a time sheet that showed he worked eighty-nine hours one week. They always dealt with appellant, but refused to pay him unless they got authorization from Gary Patton. After a conference call between Accustaff, appellant, and a person claiming to be Gary Patton, Accustaff agreed to pay appellant for the eighty-nine hours. On June 26, 1997, Gary's sent a check, signed by Gary Patton, to Accustaff for $1,617.71. The check was returned because the account on which it had been drawn was closed. None of the over $19,000 paid by Accustaff to Gary's was ever paid. Eventually, Accustaff called the Mentor police to investigate.
Gary Patton testified that he was a part-time employee at Gary's and had no ownership interest in the company. He never signed or authorized anyone at Gary's to sign his name on any check.
In June and July 1997, appellant contacted Olsen Staffing Services and Dawson Personnel Systems to payroll Gary's employees. These companies paid Gary's over $60,000 and received no payment. Keith Bohn wrote a check to Dawson for $5,000, the subject of count six, which was dishonored.
On August 4, 1997, Officer Gary Stroud of the Mentor Police Department interviewed appellant with regard to Gary's activities. Appellant admitted to Officer Stroud that he had signed Gary Patton's name without authorization and that he knew that there were no funds to cover the check. Appellant was taken into custody and incarcerated until August 8, 1997. Appellant later submitted a time card to Olsen for hours worked during the time he was incarcerated.
After being released, appellant contacted Ran Temporary Services and Man Power, Inc. to attempt to payroll Gary's employees.
On April 9, 1998, the jury returned a verdict of guilty for all counts. On May 18, 1998, the court sentenced appellant to a total of three years incarceration.
Appellant raises the following assignments of error for our review:
 "[1.] The trial court erred in the instructions given to the jury.
 "[2.] The trial court erred in allowing evidence to be presented regarding acts between appellant Keith Read and Man Power and Ran Associates.
 "[3.] The verdict is against the manifest weight of the evidence and there was insufficient evidence to support the conviction.
 "[4.] The defendant did not receive effective assistance of counsel at trial."
In his first assignment of error, appellant contends that the trial court erred in giving its jury instructions, specifically: it erred giving instructions on complicity and aiding and abetting when the evidence showed that appellant was the principal actor; it erred giving instructions about the presumptions found in R.C.2913.11(B)(1) and (B)(2) regarding passing bad checks; and it erred by not specifically instructing the jury about Count VI.
R.C. 2923.03(F) provides that an accomplice to the commission of an offense shall be prosecuted and punished as if he were a principal offender. The clear and unambiguous language of R.C.2923.03(F) states that a charge of complicity may be stated in terms of the complicity statute, R.C. 2923.03, or in terms of the principal offense. State v. Ensman (1991), 77 Ohio App.3d 701,705, 603 N.E.2d 303, 305. Under R.C. 2923.03(F), it is inconsequential whether appellant was actually indicted and prosecuted for the principal offense rather than under the complicity statute. State v. Tumbleson (1995), 105 Ohio App.3d 693,696, 664 N.E.2d 1318,
"It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." See State v. Graven (1977), 52 Ohio St.2d 112,369 N.E.2d 1205; State v. Beehive Ltd. Partnership
(1993), 89 Ohio App.3d 718, 723, 627 N.E.2d 592. The state has a burden of proving each element of a crime beyond a reasonable doubt. Consequently, in order to convict an offender of complicity, the state need not establish the principal's identity. Pursuant to R.C. 2923.03(C), the state need only prove that a principal committed the offense. State v. Perryman (1976),49 Ohio St.2d 14, 27, 358 N.E.2d 1040.
In the instant case, there is ample evidence to support the fact that appellant acted in complicity with another person, as well as acting as the principal offender. Clearly, someone besides appellant was posing as Gary Patton. While it is not clear who that person was, the prosecution was not required to prove who it was. The trial court did not err by giving a complicity instruction.
R.C. 2913.11(B) provides guidelines for when it may be presumed that a person presented a check while knowing that it would be dishonored. R.C. 2913.11(B) states:
 "For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
 "(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;
 "(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor."
The trial court instructed the jury about these presumptions pursuant to R.C. 2913.11(B)(1) and (B)(2). Appellant argues that there was insufficient evidence to support either of these presumptions because there was no evidence regarding the timing of the presentment of the check, the notice of dishonor, the notice of dishonor to appellant, and no evidence that the drawer of the check had no account.
There was evidence presented that appellant was participating in a scheme with a person posing as Gary Patton and that he represented to Accustaff that Gary Patton was the owner. He also was the main person dealing with the temporary agencies with regard to payment. It was he who promised payment by Gary's and he who informed the agencies that checks had been mailed. This is strong circumstantial evidence that appellant knew that he was passing bad checks. Circumstantial evidence and direct evidence inherently possess the same probative value. State v. Jenks
(1991), 61 Ohio St.3d 259, 263-264, 574 N.E.2d 492. Therefore, the trial court did not err giving this instruction.
Appellant is correct when he argues that the trial court did not give as specific a set of instructions to the jury regarding count six of the indictment as it did for count four. However, appellant did not object to the trial court's failure and, thus, waives the argument on appeal. Furthermore, the jury was properly instructed on the elements of passing bad checks through the trial court's instructions for count four. While appellant asserts that failure to specifically instruct the jury about count six constitutes reversible error, he cites no authority for this position. Appellant has not shown how this failure prejudiced him or that the outcome of the trial would have been different had the trial court given a more specific instruction. Therefore, the trial court did not err by giving this instruction.
We find no substantial problem with the trial court's jury instructions; appellant's first assignment of error is without merit.
In his second assignment of error, appellant asserts that the trial court erred by allowing into evidence his activities with Ran and Man Power. Appellant argues that the evidence of his dealings with these agencies should have been excluded under Evid.R. 404(B) because they were overly prejudicial.
Evid.R. 404(B) provides that:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
The evidence presented at trial showed that appellant and at least one other person were involved in a scheme to defraud temporary employment agencies out of money. Thus, evidence that appellant attempted to engage the services of other employment agencies after he had been arrested for his dealings with the other three is probative of a plan to defraud such agencies and indicative of a lack of mistake when dealing with Ran, Man Power, and Accustaff. Therefore, appellant's second assignment of error is without merit.
In his third assignment of error, appellant asserts that the guilty verdict was against the manifest weight of the evidence. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported. The test for sufficiency of the evidence is whether after viewing the probative evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Id.
Manifest weight challenges require a reviewing court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Earle (1997), 120 Ohio App.3d 457, 472-473,698 N.E.2d 440. It is well established in Ohio that the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; State v. Loza (1994),71 Ohio St.3d 61, 69, 641 N.E.2d 1082, 1096.
Appellant asserts that the prosecution failed to prove the exact date that the check was dishonored. He further asserts that the prosecution failed to proved he knowingly deceived the employment agencies; he pretended that he was Gary Patton; the agencies relied on his representations when deciding to payroll Gary's employees; he was aware that he was deceiving the agencies; he transferred a check knowing that it would be dishonored; the exact date that the check was dishonored; or that he knew anything about the funding of the account from which the checks were dishonored.
There was substantial evidence supporting each charge. Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant asserts that he received ineffective assistance of counsel. To prevail on a claim for ineffective assistance of counsel, appellant must show that counsel performed so deficiently that they were not functioning as the "counsel" guaranteed by the Sixth Amendment and that counsel's errors were prejudicial. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064. In this assignment, appellant raises the same issues that were raised in previous assignments. Because we found these assignments meritless, any deficiencies of appellant's counsel were not prejudicial. Appellant's fourth assignment of error is without merit.
The judgment of the trial court is affirmed.
FORD, P.J., CHRISTLEY, J., concur.