[Cite as *State v. Lester*, 2018-Ohio-3041.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105992

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### HOWARD LESTER

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613903-A

**BEFORE:**  Kilbane, P.J., Stewart, J., and Jones, J.

**RELEASED AND JOURNALIZED:**  August 2, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Eben McNair
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1}  Defendant-appellant, Howard Lester ("Lester"), appeals his convictions for having a weapon while under disability, criminal damaging, tampering with evidence, carrying a concealed weapon, and improper handling of a firearm in a motor vehicle.  For the reasons set forth below, we affirm.

{¶2}  In February 2017, Lester was charged in a 20-count indictment, along with the following three codefendants:  his sister, Sonya Cammon ("Cammon"), Robert Shepard ("Shepard"), and Vernell Jordan ("Jordan").[1]  Lester was charged in 11 of those counts.  The charges against him included four counts of felonious assault (Counts 1-4), two counts of having a weapon while under a disability (Counts 5 and 13), two counts of criminal damaging or endangering with furthermore clauses alleging risk of physical harm (Counts 8 and 9), one count of tampering with evidence (Count 10), one count of carrying a concealed weapon (Count 12), and one count of improper handling of a firearm in a motor vehicle (Count 14).[2]  The charges stem from incidents occurring on October 7, 2016 (victims James Jones ("Jones") and Lauren Campbell) and October 24, 2016.

{¶3}  The matter proceeded to a jury trial with all four defendants tried together.  The following evidence was adduced at trial.[3]

---

[1]This is a companion appeal with that of codefendant Cammon.  *See State v. Cammon*, 8th Dist. Cuyahoga No. 106056.

[2]Several of the counts included forfeiture, firearm, prior conviction, and repeat violent offender specifications.

[3]The having a weapon while under disability charges were tried before the bench.

{¶4} On October 7, 2016, Jordan, Shepard, and Lester were involved in a shooting at Visions Blu Lounge ("Visions Blu") on Euclid Avenue in Cleveland. Cleveland Police Officer, Demetrius Woods ("Officer Woods") testified that around midnight, he noticed a few men engaged in a loud discussion outside of Visions Blu. At the time, Woods was off duty and was working security for Visions Blu. Woods approached the group of men and they all dispersed except for one individual, Jones. Jones was upset about being robbed on a prior occasion, and the involvement in that robbery by one of the males in the group. Officer Woods recognized one of the males in the group as Lester. Based on what Jones said, Officer Woods believed "something was going to take place" that night, so he wrote down the license plate number of a black SUV used by the group that was parked outside Visions Blu. Woods identified Lester as the driver of the black SUV.

{¶5} Approximately three hours later, Woods heard gunfire coming from the front of Visions Blu. Woods ran to the front and observed people running. He also observed the same black SUV race away from the scene. Woods testified it was the same SUV because he wrote down the plate earlier that night, it was the only black SUV, and it had noticeable oversized metallic rims. Woods found Jones lying on the ground behind a vehicle in a grassy lot near Visions Blu.

{¶6} Jones testified that he got into a confrontation with Lester at Visions Blu. He was upset with Lester because Lester was at the scene, on another occasion, when he was robbed by two other individuals. Jones identified codefendants, Shepard and Jordan, as the other males with Lester during his initial confrontation. Jones testified that after the initial confrontation, he left Visions Blu and later returned around 2:00 a.m. At that time, Jones was outside of the establishment waiting for Lester to exit. He wanted to confront him about the robbery. He

observed Jordan and Shepard together, and Lester pulled up in his black SUV and exited his vehicle. Jordan then pulled out a gun and started shooting at Jones. Shepard and Lester also had guns. Jones testified that he could not see who else was shooting at him because he "was trying to take cover from the gunshots, so I really didn't see exactly who was shooting. I just know I heard a bunch of shots and then I got shot. I was shot [in both legs], so * * * I couldn't move no more." Gunshots also damaged Jones's car. Jones was taken to the hospital.

{¶7} Approximately two and a one-half weeks later, on October 24, 2016, Lester drove Jordan to MetroHealth Hospital because Jordan had been shot. Cleveland Police Officer David Price ("Officer Price") and his partner responded to a dispatch call to MetroHealth Hospital to speak with a witness to a shooting at a Cleveland Metropolitan Housing Association property. The witness, later identified as Lester, was asked to sit in Officer Price's zone car until a witness statement could be taken. Lester was told that he was not under arrest and he was not put in handcuffs. Lester was sitting in the rear passenger side seat of the police car when codefendant Cammon approached the window. Officer Price observed Lester hand his phone to Cammon through the open window. Cammon held the phone in her hand for a minute before handing it back to Lester, asking him to unlock it. Lester took the phone back and then returned the phone through the window, but also handed Cammon a black do-rag that was bunched up underneath the phone. After observing this, Officer Price immediately exited his car and stopped Cammon. Officer Price asked Cammon what was under the phone. She then gave the phone and the do-rag to Officer Price. Officer Price unwrapped the do-rag to find a small handgun (state's exhibit No. 14). Cammon was then arrested. While in the back of the zone car, Officer Price and his partner checked and confirmed that Lester had an open warrant. The officers then arrested him at that time.

**{¶8}**  Kristin Koeth ("Koeth"), a scientific examiner with the City of Cleveland Department of Public Safety — Division of Police, testified that the gun recovered by Officer Price was a Ruger .380 (state's exhibit No. 14).  Koeth further testified that the testing performed on the gun revealed that it was operable and operates normally.  Koeth testified that she did not personally test the Ruger for its operability.  The test results were sent to her by someone else.

**{¶9}**  At the conclusion of trial, the jury found Lester guilty of Count 9 (criminal damaging or endangering with further finding that Lester created a risk of physical harm), Count 10 (tampering with evidence), Count 12 (carrying a concealed weapon) and Count 14 (improper handling of a firearm in a motor vehicle).  The trial court found Lester guilty of both Counts 5 and 13 (having a weapon while under disability).  The jury found Lester not guilty on Counts 1-4 (felonious assault).[4]  The trial court sentenced Lester to a total of six years in prison.

**{¶10}** Lester now appeals, raising the following six assignments of error for review, which shall be discussed together where appropriate:

Assignment of Error One

The evidence is insufficient to support the guilty verdicts on Counts 5 and 9.

Assignment of Error Two

The guilty verdicts on Counts 5 and 9 are not supported by the manifest weight of the evidence.

Assignment of Error Three

The guilty verdicts on Counts 10, 12, 13, and 14 are not supported by the manifest weight of the evidence.

---

[4]The trial court granted Lester's Crim.R. 29 motion with regard to Count 8 — criminal damaging or endangering.

Assignment of Error Four

The handgun at issue in Counts 10, 12, 13, and 14 is the fruit of an unconstitutional seizure and it should have been suppressed.

Assignment of Error Five

Evidence that the handgun at issue in Counts 12, 13, and 14 was operable was admitted in violation of the Confrontation Clause of the Sixth Amendment and Article I, Section 10, Ohio Constitution.

Assignment of Error Six

[Lester] was denied his right to effective assistance of counsel when his attorney (1) did not move to suppress state's exhibit 14 as the fruit of an unconstitutional seizure, and (2) did not object to [Koeth's] statement that state's exhibit 14 was operable as violative of his rights under the confrontation clauses of the sixth amendment.

Sufficiency of the Evidence

{¶11} In the first assignment of error, Lester argues that there was insufficient evidence to support his having a weapon while under disability (Count 5) and criminal damaging or endangering charges (Count 9) as they relate to the incident involving Jones.

{¶12} The test for sufficiency requires a determination whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} Lester argues that there is insufficient evidence to convict him of shooting at Jones's car because codefendants Shepard and Jordan were acquitted on Count 9 — criminal

damaging.   As a result, he contends that he cannot be found guilty as an accomplice on the same charge if there was no principal who committed the offense.   In support of his argument, he relies on *State v. Perryman*, 49 Ohio St.2d 14, 27, 358 N.E.2d 1040 (1976), for the proposition that the state need only prove that a principal committed the offense.   Lester further contends that he could not be convicted of Count 5 — having a weapon while under disability — if there is insufficient evidence of him shooting at Jones's car.

{¶14} Lester was convicted of criminal damaging in violation of R.C. 2909.06(A)(1), which provides that Lester knowingly caused or created a substantial risk of harm to Jones's vehicle without Jones's consent.   Under the complicity statute, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"   R.C. 2923.03(A)(2).

{¶15} In *State v. Graven*, 52 Ohio St.2d 112, 369 N.E.2d 1205 (1977), the Ohio Supreme Court considered whether there must be proof beyond a reasonable doubt that the principal violated the statute when one is charged with aiding and abetting another.   In finding that the principal does not need to be convicted in order to convict the aider and abettor, the court stated:

> The fact that the General Assembly intended to equate the prosecution and punishment of principals, aiders, abettors, and procurers is clear from R.C. 2923.03(B), which provides that it is no defense to a charge of complicity that no person with whom the accused was in complicity has been convicted as a principal offender.   R.C. 2923.03(A)(2) and (F) provide that one who aids and abets another in committing an offense is guilty of the crime of complicity, and may be prosecuted and punished as if he were the principal offender.   *State v. Bell* (1976), 48 Ohio St.2d 270, 278.   Aiding and abetting has been characterized as a substantive and independent offense so that aiders and abettors may be prosecuted and convicted as principals without the trial or conviction of the principal offender.   *Hartshorn v. State* (1876), 29 Ohio St. 635.

*Id.* at 115-116.

{¶16} In *State v. Beehive Ltd. Partnership*, 89 Ohio App.3d 718, 722-723, 627 N.E.2d

592 (8th Dist.1993), this court, relying on *Graven*, rejected the Beehive's argument that its convictions were improper under complicity grounds since neither of the two individuals charged with the same offenses were convicted. This court stated:

> In this context, R.C. 2923.03(B) specifically recognizes the acquittal of one participant of a criminal offense does not affect the prosecution of an accomplice as follows:

> "It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." *See* [*Graven*, 52 Ohio St.2d 112, 369 N.E.2d 1205].

> We note that even if [the defendant] had properly preserved and raised this claim in the trial court, [the defendant] has failed to demonstrate the trial court erred by refusing to enter a judgment of acquittal in its favor on the three charges due to the insufficiency of the evidence.

*Id.* at 723.

{¶17} In the instant case, a review of the record reveals that Jones had a confrontation with Lester earlier in the evening at Visions Blu. Jones testified that Lester was present when he was robbed on a previous occasion. Around closing time, Jones was approached by two males, who were shooting at him. He also observed Lester approach him with a gun. In addition, Officer Woods identified Lester as the driver of a black SUV that sped away after the shooting. While Lester may not have actually shot his gun at Jones, the foregoing is sufficient evidence to convict Lester of criminal damaging or endangering under an accomplice liability theory. Because Lester had a gun, there is also sufficient evidence to convict Lester of having a weapon while under a disability.

{¶18} Therefore, the first assignment of error is overruled.

Manifest Weight of the Evidence

**{¶19}** In the second assignment of error, Lester argues that his convictions for having a weapon while under disability (Count 5) and criminal damaging or endangering (Count 9) are against the manifest weight of the evidence. In the third assignment of error, Lester argues that his convictions for tampering with evidence (Count 10), carrying a concealed weapon (Count 12), having a weapon while under disability (Count 13), and improperly handling a firearm in a motor vehicle (Count 14) are against the manifest weight of the evidence.

**{¶20}** In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In a manifest weight analysis, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶21}** In the present case, with regard to the incident on October 7, 2016, the trier of fact heard testimony through Jones and Officer Woods that Lester was present during the shooting and had a gun.

**{¶22}** With regard to the October 24, 2016 incident, the trier of fact heard testimony from Officer Price that Lester was sitting in the rear passenger side seat of his police cruiser when Cammon approached the window. Officer Price observed Lester hand his phone to Cammon through the open window. Before handing the phone back to Lester, Cammon asked him to unlock it. Lester took the phone back and then returned the phone through the window, but also handed a black do-rag that was bunched up underneath the phone. After observing this, Officer

Price exited his cruiser and stopped Cammon. Officer Price asked Cammon what was under the phone. Cammon then gave the phone and the do-rag to Officer Price. A small handgun was wrapped in the do-rag.

{¶23} When considering this evidence, the reasonable inferences, and the credibility of the witnesses, we cannot say the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶24} Accordingly, the second and third assignments of error are overruled.

Ineffective Assistance of Counsel — Unconstitutional Seizure

{¶25} In the sixth assignment of error, Lester argues defense counsel was ineffective for failing to move to suppress the gun discovered by Officer Price (state's exhibit No. 14). In the fourth assignment of error, Lester argues that the handgun Officer Price discovered on October 24, 2016, is the fruit of an unconstitutional seizure and should have been suppressed.

{¶26} In claiming ineffective assistance of counsel, Lester must demonstrate both that counsel's performance was deficient (counsel's performance fell below an objective standard of reasonableness) and that counsel's deficiency prejudiced him (counsel's errors were so serious as to deprive the defendant of a fair trial). *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶27} In deciding an ineffectiveness claim, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland* at 690. Lester must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694.

{¶28} With regard to establishing an ineffective assistance of counsel claim for failure to

file a motion to suppress, the defendant must prove that there was a basis to suppress the evidence in question. *State. v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 165-166, 2001-Ohio-132, 749 N.E.2d 226 (where the record contains no evidence justifying a motion to suppress, the defendant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion).

{¶29} Lester contends he was under arrest because he submitted to the authority of the police as stated in *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A person is seized, within the meaning of the Fourth Amendment, "'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.'" *Id.*, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶30} In the instant case, Lester was identified as a witness to a shooting. He was asked to sit in Officer Price's police cruiser until a witness statement could be taken. Officer Price told Lester that he was not under arrest, and there is no record of Officer Price searching Lester prior to entering the cruiser. Lester was not handcuffed, and the back window of the cruiser remained open, per Lester's request. Lester was able to speak with Cammon and voluntarily handed her his phone through the window. Under the totality of these circumstances, a reasonable person would not believe he or she was under arrest. Because Lester was not under arrest at the time Officer Price discovered the gun, trial counsel's decision to not move to suppress state's exhibit No. 14 does not fall below the objective standard of reasonableness.

{¶31} Therefore, the sixth assignment of error is overruled with regard to defense counsel failing to move to suppress and the fourth assignment of error is overruled.

Ineffective Assistance of Counsel — Confrontation Clause

**{¶32}** In the sixth assignment of error, Lester additionally argues defense counsel was ineffective for failing to object to Koeth's testimony that the gun (state's exhibit No. 14) was operable, which is an element of the offenses in Counts 12-14 (carrying a concealed weapon, having a weapon under disability, and improperly handling a firearm in a motor vehicle). In the fifth assignment of error, Lester argues that Koeth's testimony that the gun was operable was evidence of testimonial hearsay in violation of the Confrontation Clause as set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Specifically, he refers to Koeth's testimony that the testing performed on the Ruger .380 (state's exhibit No. 14) revealed that it was operable and operated normally. Koeth testified that she did not personally test the Ruger for its operability. The test results were sent to her by someone else. Lester contends if defense counsel would have objected to this testimony, it would have been ruled inadmissible and Lester would have been acquitted of the Counts 12-14.

**{¶33}** The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The United States Supreme Court has interpreted this to mean that the admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Washington* at 53-54.

**{¶34}** In *Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), however, the United Supreme Court found that "[o]ut-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id.* at 58.

**{¶35}** Here, Koeth was accepted as an expert witness with no objection by Lester.

Koeth's conclusion that the .380 Ruger was operable and functioned normally was based on test results sent to her by someone else. Applying *Williams* to the instant case, Koeth's testimony does not violate the Confrontation Clause and is admissible. Instead of objecting to Koeth's testimony, defense counsel cross-examined Koeth, attempting to attack her credibility. Defense counsel asked:

> [DEFENSE COUNSEL]: Ma'am, did you test fire any of these weapons?
>
> KOETH: No. I did not test fire these firearms.
>
> [DEFENSE COUNSEL]: Someone else did that and it was sent to you later?
>
> KOETH: Yes.

{¶36} Because Koeth's testimony was admissible, defense counsel's chosen strategy, in the instant case, is not sufficient grounds for ineffective assistance of counsel.

{¶37} Therefore, the sixth assignment of error is overruled with regard to defense counsel failing to object Koeth's testimony and the fifth assignment of error is overruled.

{¶38} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
LARRY A. JONES, SR., J., CONCUR