BALTZELL-WOLFE AGENCIES, INC., APPELLEE, v. CAR WASH INVESTMENTS NO. 1, LTD., ET AL., APPELLEES; MOSS ET AL., APPELLANTS.

(No. 78AP-12—Decided June 27, 1978.)

*Messrs. Knepper, White, Arter & Hadden,* and *Mr. Richard A. Frye* for Baltzell-Wolfe Agencies, Inc.

*Messrs. Porter, Wright, Morris & Arthur, Mr. Michael P. Graney* and *Mr. Michael Yarbrough,* for appellants.

*Mr. Thomas P. Sant,* for appellees Car Wash Investments No. 1, Ltd., et al.

WHITESIDE, J. Defendants Moss and Lefkowitz appeal from a judgment of the Franklin County Court of Common Pleas and raise a single assignment of error, as follows:

"The trial court's judgment imposing personal liability upon Messrs. Moss and Lefkowitz is contrary to law because said defendants, prior to the time the debts in question were incurred, had withdrawn from the limited partnerships and filed amended certificates of limited partnership evidencing their withdrawal. Further, the trial court's finding that plaintiff had no actual notice of the withdrawal of Messrs. Moss and Lefkowitz from the limit-

ed partnerships is against the manifest weight of the evidence."

Plaintiff, an insurance agency, brought this action to recover premiums for insurance policies sold by it to three limited partnerships, Car Wash Investments No. 1, Ltd., Car Wash Investments No. 2, Ltd., and Auto Wash and Fuel, Ltd.

Prior to January 1, 1976, defendants Moss and Lefkowitz were general partners of the three limited partnerships. At that time, they withdrew as general partners, and Chapel Management Company, a corporation with which they were associated, was substituted as sole general partner by virtue of an amended limited partnership certificate filed with the clerk of courts.

Plaintiff originally sold insurance policies to the three limited partnerships while Moss and Lefkowitz were general partners and continued the policies of the three limited partnerships during the year 1976. However, premiums were not paid during the year 1976. Plaintiff did not deal directly with defendants Moss and Lefkowitz but, instead, dealt with their agent, Kelly, who continued as president of the new general partner, Chapel Management Company, until replaced during the year 1976 by Whitmore.

The case was referred in the trial court to a referee, who heard the evidence and made his report recommending findings that, since plaintiff had extended credit to the limited partnerships prior to the withdrawal of Moss and Lefkowitz as general partners and the substitution of Chapel Management in their stead, plaintiff was entitled to actual notice of the substitution of the general partners, and, since no such actual notice was given, defendants Moss and Lefkowitz continued to be liable as general partners for the extension of credit to the partnerships by plaintiff. Objections were made to the report of the referee, and the trial court overruled the objections, approved the report of the referee, and entered judgment against the partnerships, as well as against Moss and Lefkowitz. No issue is raised on appeal as to the judgment against the

partnerships, only defendants Moss and Lefkowitz having appealed.

Defendants' assignment of error raises two issues. The first issue is whether their withdrawal from the three limited partnerships by filing amended certificates showing a substitution of Chapel Management Company as general partner was sufficient in and of itself to preclude their liability for debts incurred by the three limited partnerships after such withdrawal.

Defendants contend that the filing of the amended certificates of limited partnership for the three partnerships constituted constructive notice that they were no longer general partners of the partnership. However, even assuming such filing to constitute constructive notice, the issue is whether a person who had previously extended credit to the partnerships is entitled to actual notice of the withdrawal, rather than merely constructive notice.

Plaintiff contends that, since R. C. 1775.05(B) provides that the general partnership law applies to limited partnerships except to the extent that they are inconsistent with the limited partnerships statutes, R. C. 1775.28 and 1775.34 are applicable under the circumstances herein. R. C. 1775.34(A) provides:

"After dissolution a partner can bind the partnership except as provided in division (C) of this section: * * *

"(2) By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction:

"(a) Had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution; * * *."

R. C. 1775.28 defines "dissolution" as "* * * the change in the relation of the partners caused by any partner's ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Defendant contends that R. C. 1775.34 is not applicable because the act relied upon by plaintiff to bind them was not an act of one of the general partners and because no dissolution had occurred, relying upon R. C. 1781.20, which provides that:

"The retirement, death, or insanity of a general partner dissolves the partnership, unless the business is continued by the *remaining* general partners:

"(A) Under a right so to do stated in the certificate; or,

"(B) With the consent all members." (Emphasis added.)

The circumstances of this case are not those contemplated by either R. C. 1775.34 or 1781.20. The former, R. C. 1775.34, contemplates acts of one of the partners, or general partners in the case of a limited partnership, after dissolution as binding the partnership, and thus all general partners, with respect to persons previously having extended credit to the partnership who had no actual notice of dissolution. On the other hand, R. C. 1781.20 contemplates the continuation of a limited partnership by one of the existing general partners upon the retirement of another general partner. Here, both general partners withdrew, and a new and' different general partner was substituted. There was no remaining general partner to carry on the business but, instead, a new and different general partner. Some of the circumstances herein are contemplated by R. C. 1775.40 with respect to the continuation of the business of a partnership after withdrawal of one or more of the partners, or the admittance of a new partner. This section, however, makes no reference to notice requirements such as are set forth in R. C. 1775.34 and contemplates dissolution.

The circumstances herein involved do not precisely fall within any provision of either R. C. Chapter 1775 or 1781. Where these statutes do not provide the rule of law to be applied, R. C. 1775.04 provides that: "the rules of law and' equity, including the law merchant, shall govern." The issue thus is whether a general partner of a limited partnership after his withdrawal as such is liable to a person who had previously extended credit to such limited partnership and continues to do so after continuation of the general partnership after such withdrawal and the substitution of a new general partner, where such creditor had no actual notice of the withdrawal or change of general

partners. We conclude that, although this case does not fall precisely within the provisions of R. C. 1775.34, the principles thereof should nonetheless apply. Therefore, where credit is extended to a limited partnership after a change of general partners by a creditor having no notice or knowledge of such change of general partners, and who had extended credit to the partnership prior to such change, the withdrawing general partners are liable to the creditor for such credit extended despite the substitution of a new general partner. It is stated in 60 American Jurisprudence 2d 121, Partnership, Section 210, as follows:

"* * * If, after a change of partners, a customer continues to deal with the firm without notice of the change, he has, on being informed of the fact, the option of holding either the old or the new firm liable for his debt, but it seems he must make an election between them and cannot hold both the outgoing and incoming partners responsible."

This conclusion seems consistent with prior Ohio authority, although not precisely controlling. See *Speer* v. *Bishop* (1874), 24 Ohio St. 598, and *Middletown Lumber Co.* v. *Martin* (1918), 10 Ohio App. 188. *Cf. Palmer* v. *Dodge* (1854), 4 Ohio St. 21, and *Cook* v. *Penrhyn Slate Co.* (1880), 36 Ohio St. 135. With respect to the obligation of a partner, it is stated in *Palmer*, at page 27, as follows:

"This capacity continues as long as the joint operations of the firm endure, and contracts are necessary to accomplish its purposes. For the protection of third persons, it may continue longer. As the period of its dissolution, by the agreement of the parties, may only be known to themselves, the law exacts, not only that they should hold themselves out no longer as operating jointly, but that they use reasonable diligence to advise others of the termination of their previous connection. As to those who have previously dealt with the firm, the notice must be actual; as to others, public notice in some newspaper circulating in the neighborhood is sufficient, if even that is required."

We reject defendants' contention that constructive notice by filing of the amended certificate of limited part-

nership is sufficient. Such "constructive notice" would be available whether a limited partnership or a general partnership be involved in light of the filing requirements of R. C. Chapter 1777. Rather, under the circumstances, actual notice of the change of general partners must be given to a creditor who had previously extended credit to the partnership and continues to do so after such change of general partners, in order for the withdrawing general partners to avoid liability for the continuation of the extension of credit.

The second issue raised by the assignment of error is whether the trial court's finding that plaintiff had no actual notice of the withdrawal of defendants Moss and Lefkowitz as general partners is against the manifest weight of the evidence. There is conflicting evidence upon such issue. Plaintiff's exhibit 1 is a letter to plaintiff dated March 14, 1975, on the letterhead of Car Wash Investments No. 1, Ltd., but referring to all three limited partnerships and signed by John D. Kelly, Jr., indicating the general partners to be defendants Moss and Lefkowitz. On the other hand, defendants point to plaintiff's exhibit 2, which is a letter to plaintiff dated October 15, 1975, signed by Kelly as president of Chapel Management Company and referring to the insurance coverage for the three limited partnerships. Defendants contend that this put plaintiff on notice as to the involvement of Chapel Management Company. However, this letter was dated two and a half months prior to the date (December 31, 1975), of execution of the three second amended certificates of limited partnership substituting Chapel Management Company for defendants Moss and Lefkowitz as general partners of the three limited partnerships. Such letter was shortly after the execution on September 12, 1975, of an amended certificate of limited partnership with respect to Auto Wash and Fuel, Ltd., whereby Chapel Management Company was substituted as a limited partner, not a general partner.

Defendants also refer to direct testimony of defendant Moss that, in June or July of 1976, he informed Mr. Wolfe, an agent of plaintiff, that he, Moss, was no longer

a general partner of the partnerships. Wolfe, however, testified that he was not so informed by Moss. Furthermore, such notification, if it occurred, was nearly six months after the substitution of Chapel Management as sole general partner.

Defendants are correct that there is ample evidence in the record from which the trial court *could* have found that plaintiff had actual notice of the change of general partners. On the other hand, there was competent, credible evidence supporting the trial court's finding that plaintiff had no actual notice of the withdrawal of defendants from the three limited partnerships. Under such circumstances, a judgment cannot be reversed as being against the manifest weight of the evidence. See *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279. Accordingly, the assignment of error is not well taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and MCCORMAC, JJ., concur