RITCHIE, APPELLEE AND CROSS-APPELLANT, *v.* CORDRAY ET AL., APPELLANTS AND CROSS-APPELLEES.

(No. 83AP-108—Decided September 15, 1983.)

*Mr. Theodore R. Saker,* for appellee and cross-appellant Ritchie.

*Messrs. Gayton, Walter & Tilton* and *Mr. Charles W. Gayton,* for appellant and cross-appellee Cordray.

*Messrs. Chester, Hoffman & Willcox; Mr. John J. Chester, Mr. Richard C. Addison* and *Mr. Donald C. Brey,* for appellant and cross-appellee Wilcox.

NORRIS, J. All parties appeal from a decision of the trial court finding that they had failed to complete a contract for the sale of real property, and ordering that defendants, W. Daniel Cordray and Stanley R. Wilcox, return to plaintiff, John G. Ritchie, $50,500 that he had paid them pursuant to an option contract. Plaintiff appeals on the basis that the court awarded him insufficient damages.

On June 25, 1977, the parties entered into a "REAL ESTATE OPTION CONTRACT" which recited that plaintiff was paying defendants $32,500 for the "exclusive right and option to purchase" defendants' real property, and specified

that the option was to be "exercised prior to midnight December 31, 1977 by giving to one or both of the Sellers a written notice * * * notifying the Sellers of the exercise of the Option by personally handing the same to one or both of the Sellers or by posting the same [by] certified mail to one or both * * * at 3580 Fisher Road, Columbus, Ohio."

Other provisions of the contract follow:

"*FURTHER CONSIDERATION*: As further consideration for this Option, the Buyer * * * shall cause to be paid to the Sellers, the sum of Three Thousand Dollars ($3,000.00) on the first day of each and every month during the term of this option, said payments being made on the first day of July, August, September, October, November and December of 1977. Upon the failure to make said payments, said Option shall be null and void. * * * If notice of the exercise of the Option has been given, then no further payments need to be made * * *.

"*PURCHASE PRICE*: The purchase price of said property shall be Six Hundred Fifty Six Thousand Dollars ($656,000.00), and in the event that the Option is exercised, the consideration above stated of Thirty Two Thousand Five Hundred Dollars ($32,500.00) shall be applied to reducing the purchase price, while the sums of Three Thousand Dollars ($3,000.00) per month, as above set forth, shall not be applied as a reduction of the purchase price.

"*CLOSING*: In the event that the Option to Purchase is exercised by the Buyer, * * * the closing of said transaction shall take place upon delivery of the balance of the purchase price which shall be no later than thirty days after the exercise of said Option.

"* * *

"*OUTSTANDING LEASE*: The Sellers agree that upon the exercise of said Option they will deliver to Buyer a good and sufficient Warranty Deed * * *. Subject, however, to the rights of the * * * lessees in and to a certain * * * lease agreement dated October 12, 1976 * * *."

On the afternoon of Saturday, December 31, plaintiff left a written notice of his exercise of the option under the door of defendants' place of business at 3580 Fisher Road (no one was present), and his attorney sent to the same address a Western Union "Mailgram" also purporting to exercise the option. The notice was discovered under the door on the next business day, January 2, 1978. When the sale was not consummated, plaintiff on February 21 filed suit for the return of the $50,500 he had paid to defendants, together with additional damages.

At trial, defendants contended that they attempted to set closings for the sale of the property during January and February 1978, but that plaintiff was unable to secure financing necessary to pay for the property. Plaintiff argued that defendants breached the contract by not delivering a deed to him.

In its decision, the trial court found that:

"* * * [I]n January and February, 1978, there was a breakdown in completion of the contract in issue, primarily the result of misunderstandings between the attorneys for both sides. The result was the failure of both plaintiff and defendants to complete the contract, both from the standpoint of obtaining necessary financing on the one hand and obtaining necessary deed, title binder and closing on the other. Under such circumstances, neither side should be penalized nor rewarded. Defendants have ultimately sold the property otherwise at a sizable profit. Plaintiff has lost its deposit and payments under the option."

Defendants raise three assignments of error:

"I. The trial court erred in finding defendants in breach of the option contract in that the option was never properly exercised by plaintiff.

"II. The trial court erred in finding defendants in breach of the option con-

tract in that the trial court misinterpreted defendants' duties under that contract.

"III. The trial court erred in awarding damages to plaintiff in that plaintiff never had the financing necessary to purchase the property and in that plaintiff at all times failed and refused to purchase the property."

Plaintiff raises one cross-assignment of error:

"Cross-appellant assigns as error the failure of the trial court to award him an adequate judgment amount in this cause; in failing to follow the law as to damages and in failing to rectify the economic injustice inflicted upon cross-appellant."

The assignments of error will be discussed together.

An option is an agreement to keep an offer open for a specified time; it limits the customary power of an offeror to revoke his offer prior to its acceptance. See *George Wiedemann Brewing Co.* v. *Maxwell* (1908), 78 Ohio St. 54; Restatement of the Law 2d, Contracts (1981) 73-74, Section 25. In the ordinary real estate option contract, the seller offers to sell his real property upon fixed terms, and he and his prospective buyer agree that, in exchange for a consideration paid by the buyer, the seller will leave his offer open for a specified time. Within this context, the option contract is not a contract to buy and sell the property, but only a contract whereby the seller agrees to leave his offer to sell open for a time-certain. Confusion often arises since the option is combined with the main offer to sell and its attendant detailed terms.

However, the two are separate and independent, even though found in one document; the option is collateral to the main offer to sell. The main offer does not become a contract to buy and sell unless and until its terms are accepted. The option, on the other hand, is already a binding complete contract to leave the offer open — there has been both offer and acceptance, supported by consideration. See

*Sause* v. *Ward* (1917), 7 Ohio App. 446, at 450-451.

Under the circumstances of this case, the parties had entered into a binding option contract whereby defendants agreed to leave open for acceptance until midnight of December 31 their offer to sell their real property upon the terms fixed in the main offer portion of the document. It is this acceptance of the main offer which the contract refers to as "exercise of the option."

Although acceptance of the main offer contained in an option contract is not operative until received by the offeror (here, the sellers) (Restatement of the Law 2d, Contracts [1981], 151, Section 63[b]), and the general rule is that, where an offer prescribes the place, time, or manner of acceptance, those terms must be strictly complied with by the offeree (here, the buyer) (see *Schirtzinger* v. *Albery* [May 25, 1971], Franklin App. No. 9984, unreported; Restatement of the Law 2d, Contracts [1981] 147, Section 60), strict compliance can be waived by the offeror. Because defendants acknowledged that they received plaintiff's acceptance on the next business day and were still willing to sell the land to him and in fact attempted to have the sale consummated, it is apparent that strict compliance with the terms of acceptance was waived, and that the main offer was in fact accepted. Accordingly, at that point, the parties had entered into a binding contract for the sale and purchase of defendants' real property.

Obviously, the option contract was not breached by either party. The question remains whether the contract for sale of the property was breached. The trial court apparently concluded that both parties had breached the contract and awarded damages to plaintiff, but not to defendants. The key and essential provision of the contract and the performance required of plaintiff was that he pay for the property. It is uncontroverted that he never tendered payment; in fact, the

evidence indicates that during January 1978 he avoided defendants' efforts to close the sale. Plaintiff's argument that defendants breached the contract because they failed to deliver a deed is not persuasive, as his position in this regard appears to have been formed with the benefit of hindsight — it was first conveyed to defendants on January 31, more than a month after he attempted to exercise the option. At that point in time he was in breach of the contract provision which required payment within thirty days of exercise of the option.

Plaintiff's position is grounded upon his strict and literal reading of the "OUTSTANDING LEASE" provision of the contract, and, if pursued to its logical conclusion when read in conjunction with the "CLOSING" provision, means that defendants were required to convey title to him immediately upon his exercise of the option, and then wait thirty days for a "closing" and payment. While there can be circumstances where a contract will provide for conveyance of title prior to payment, plaintiff has failed to point out the existence of any such circumstances in this case. Apart from some vague references in the testimony regarding plaintiff's need for a legal description of the property (there was testimony that it was made available to him) and title evidence (the contract is silent regarding any obligation of defendants in this regard), in order to enable him to obtain financing, plaintiff offered no explanation as to why conveyance of title prior to payment was contemplated by the contract. Accordingly, if the deed delivery provision is to be construed with the balance of the contract in a manner which will avoid an absurd result, it must be assumed that delivery of the deed at the time the option was exercised was not essential to the performance of the contract. In the context of the "OUTSTANDING LEASE" provision, the words "upon the exercise" should be read as having the same meaning as the words "in the event of the exercise."

There was no credible evidence that plaintiff ever demanded a deed prior to January 31. It is inconsistent for him to seek a liberal, expanded construction of the notice and payment provisions of the contract and yet seek a hypertechnical construction of the deed delivery provision.

It is well-settled that tender of performance by one party to a contract is excused where it is clear to that party that the other party is unable to perform. See *Gebbie* v. *Efros* (1917), 95 Ohio St. 215; *Diem* v. *Koblitz* (1892), 49 Ohio St. 41. Although there was testimony from plaintiff's witnesses that he would have been able to obtain financing, there was no evidence that he actually had obtained it (in fact, plaintiff's source admitted he had not committed himself), or that he ever communicated to defendants his ability to obtain financing. And, as mentioned above, it was uncontroverted that plaintiff never tendered payment to defendants. Under these circumstances, defendants were under no obligation to convey title to a buyer who, even though pressed to close the sale, had given no indication that he could or would pay for the property.

Under the terms of the option contract, the $50,500 paid by plaintiff to defendants was the consideration for their agreement to keep open their offer to sell, not a deposit. Plaintiff was to receive credit for a portion of that amount against the purchase price only if he purchased the property; otherwise, the entire consideration for the option contract remained defendants'. Accordingly, because defendants had not breached either the option contract, or the purchase contract, the trial court erred in ordering the consideration returned to plaintiff. Plaintiff had only to obtain his financing and proceed to closing in order to obtain the benefit of his bargain and a credit against the purchase price for a portion of his consideration paid for the option. Because he did neither, he was in breach of the purchase contract. In view of the evidence

concerning defendants later having sold a portion of the property to another, the trial court was warranted in concluding that they had not been damaged by plaintiff's failure to perform.

Defendants' first assignment of error is sustained to the extent that the trial court found them in breach of the option contract; their second and third assignments of error are sustained; plaintiff's assignment of error is overruled; the judgment of the trial court is reversed; and this cause is remanded to the trial court with instructions to enter judgment for defendants in accordance with this option.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.