OPINION *Page 2 
 I. Facts/Procedural History {¶ 1} Plaintiffs-appellants, Dennis E. Ho wick, individually and as executor of the estates of Harold E. Howick and Lavaun Howick, David H. Howick, Ralph W. Bomholt, Rebecca Meyer as ancillary administrator of the estate of Edna B. Penny, Luke Springer, Jacqualyn Springer, Rick Rose as executor of the estates of Arlington and Florentine Rose, V. Marjorie Miesse, individually and as executor of the estate of Robert O. Miesse (hereinafter collectively "appellants"), appeal the Mercer County Court of Common Pleas grant of summary judgment in favor of defendant-appellee, John Irmscher (hereinafter "Irmscher"). For the reasons that follow, we affirm.
 {¶ 2} This case was previously before this Court in August 2007.Howick, et al. v. Lakewood Village Ltd. Partnership, et al, 3d Dist. No. 10-06-25, 2007-Ohio-4370 (hereinafter "Howick I"). For purposes of this appeal, we will provide a summation of the relevant facts and procedure as they appeared in our prior opinion, along with additional facts and procedure pertinent to this appeal.
 {¶ 3} During the early 1990's, Irmscher began negotiating the purchase of land with farmers outside of Celina, Ohio for the purpose of constructing a housing and golf course development called "Eaglebrooke."Howick, 2007-Ohio-4370, at ¶ 2. During the course of negotiations, Irmscher entered into a real estate *Page 3 
purchase agreement with the Roses in July 1990 and closed on the real estate in August 1990, executing and delivering a promissory note to the Roses. Id. Also in August 1990, Irmscher negotiated an option to purchase land from the Howicks. Id. In December 1991, Irmscher negotiated an option to purchase land from Bomholt. Id. At some point during the course of obtaining real estate for Eaglebrooke, Irmscher realized that he would be unable to complete the development by himself and decided to form a limited partnership. Id.
 {¶ 4} Thereafter, Irmscher obtained options from the Springers and the Miesses in April 1993 and May 1993, respectively. Id. at ¶ 3; (Joint Exs. 68, 44). These later options, which expired in April 1994, contained a clause that allowed Irmscher to assign the options to any "corporation or partnership formed for the purpose of constructing a golf course and housing development." Id. Additionally, in June 1993, the Roses agreed to allow the promissory note executed by Irmscher for their property to be "assumed by the corporation or partnership to be formed by Irmscher to develop the golf course and housing project [and to] have [the real estate they sold to Irmscher] released from the lien of the Mortgage" for additional consideration and substitute collateral. Id. at ¶ 4; (Joint Ex. 57).
 {¶ 5} Irmscher also obtained new options from the Howicks and Bomholt in August 1993 and October 1994, respectively, which expired in April 1994. Id. at ¶ 5; (Joint Exs. 24, 10). The new options, like those executed by the Springers *Page 4 
and the Miesses, contained a provision that allowed Irmscher to assign the options to any "corporation or partnership formed for the purpose of constructing the golf course and housing development." Id.
 {¶ 6} Prior to February 1994, Irmscher created a corporation called Irmscher Development, Inc. and was its designated President. Id. at¶ 6, fn. 2. Irmscher also discussed forming a partnership with three other parties: Thomas Knapke, who had experience fund-raising and marketing, Charles E. Samples, who had experience in housing construction, and Fanning Howey Associates, Inc., an architecture firm. (Irmscher Depo. at 29-30). At some point following these discussions with Irmscher, Samples created Samples Associates, Inc., and Knapke created Knapke Associates, Inc.
 {¶ 7} On February 25, 1994, Lakewood Village Limited Partnership (hereinafter "Lakewood") was created with Irmscher Development, Inc., F/H Investments, Inc., Knapke Associates, Inc., and Samples Associates, Inc. as its general partners. Id. at ¶ 6. On February 29, 1994, Lakewood filed its Certificate and Agreement of Limited Partnership with the Mercer County Recorder's Office, which listed the same four corporations as general partners. Id; (Joint Ex. 122).
 {¶ 8} On March 9, 1994, Irsmscher called a meeting for the landowners to meet Lakewood's general partners and to ask the landowners to extend their options, which all expired in April 1994. Id. at ¶ 7. During this meeting, Irmscher *Page 5 
introduced the landowners to Samples, Knapke, and Kent Bryan, an F/H Investments representative, and explained their roles in Lakewood. (Irmscher Depo. at 29-30, 110-12).
 {¶ 9} On March 15, 1994, Bomholt, the Howicks, the Springers, and the Miesses agreed to extend their options to July 14, 1994.Howick, 2007-Ohio-4370, at ¶ 13; (Joint Exs. 12, 25, 70, 45). That same day, Lakewood filed its partnership records with the Ohio Secretary of State's Office, including a Report of Use of Fictitious Name, which listed Irmscher Development, Inc., F/H Investments, Inc., Knapke Associates, Inc., and Samples Associates, Inc. as general partners. Id.; (Joint Ex. 122). On March 18, 1994, the Roses agreed to extend the closing date for their real estate purchase agreement to August 16, 1994. Id; (Joint Ex. 59).
 {¶ 10} In July 1994, Irmscher exercised the options. Id. at ¶ 14. In August 1994, Irmscher assigned his rights and interests in the options to Irmscher Development, Inc. which, in turn, assigned its rights and interests in the options to Lakewood. Id. at ¶ 15; (Joint Exs. 124, 125). On August 16, 1994, Lakewood closed on all the transactions, which resulted in the transfer of the property to Lakewood, and promissory notes being issued to the landowners for portions of the purchase price. Id.; (Joint Exs. 18, 33, 49, 57, 76). All closing documents, including the promissory notes, were signed in the name of Lakewood by Irmscher, as President of Irmscher Development, Inc. Id., fn. 15; (Doc. No. 1, Exs. *Page 6 
2-20). In addition, the Roses agreed that Lakewood would assume their promissory note and that Irmscher would not be personally liable on the note. Id. at ¶ 15; (Joint Ex. 64)
 {¶ 11} In July 2002, Lakewood defaulted on the promissory notes. Id. at ¶ 16; (Doc. No. 1). On June 23, 2004, appellants filed a complaint against Lakewood and its general partners. Id. at ¶ 17; (Doc. No. 1). In their first claim, appellants alleged a breach of contract against Lakewood for defaulting on the notes. Id.; (Doc. No. 1). In their second claim, appellants sought to impose joint and several liability upon the general partners for losses on the notes. Id.; (Doc. No. 1). In their third claim, appellants sought to impose personal liability upon Irmscher, Fanning Howey, Knapke, and Samples for the losses on the notes. Id.; (Doc. No. 1). Appellants' third claim alleged fraud and partnership by estoppel.
 {¶ 12} On August 19, 2004, appellants moved for partial summary judgment on their first claim for breach of contract, which the trial court granted on November 18, 2004. Id. at ¶¶ 18, 22; (Doc. Nos. 21, 48).
 {¶ 13} On October 25, 2005, Irmscher filed a motion for partial summary judgment as to appellants' third claim, which sought to impose personal liability on the basis of fraud and partnership by estoppel. Id.; (Doc. No. 118). *Page 7 
 {¶ 14} On June 30, 2006, the trial court granted Irmscher's motion for partial summary judgment. (Doc. No. 169). In granting summary judgment, the trial court found that appellants' fraud claim lacked merit since the evidence submitted failed to show any intent to mislead, and appellants' reliance was unjustified. Likewise, the trial court found that appellants' partnership by estoppel claim was meritless since appellants' reliance was unjustified.
 {¶ 15} On July 27, 2006, appellants filed a notice of appeal.Howick, 2007-Ohio-4370, at ¶ 30; (Doc. No. 170). On August 16, 2006, the trial court entered a stipulated notice of dismissal without prejudice and nunc pro tune order of entry of final judgment. Id. at ¶ 31; (Doc. No. 174). The trial court indicated that it had disposed of appellants' first claim in its November 2004 judgment entry granting appellants' motion for summary judgment; that it disposed of appellants' third claim in its June 2006 judgment entry granting defendants' motion for summary judgment; and that the only claim remaining was appellants' second claim and Irmscher's counterclaim against the Roses. (Doc. No. 174). The entry also indicated that, pursuant to Civ. R. 41(A)(1)(b) and upon stipulation of the parties, appellants voluntarily dismissed their second claim without prejudice, and Irmscher voluntarily dismissed his counterclaim. (Id.). Finally, the trial court indicated that it intended its June 2006 entry to be a final appealable order pursuant to Civ. R. 54(B). (Id.). *Page 8 
 {¶ 16} On August 27, 2007, this Court reversed the trial court's grant of summary judgment with respect to appellants' third claim of fraud and partnership by estoppel against Irmscher. Howick, 2007-Ohio-4370.
 {¶ 17} On March 3, 2008, appellants filed a second amended complaint re-alleging partnership by estoppel and fraud claims against Irmscher. (Doc. No. 179).
 {¶ 18} On August 22, 2008, Irmscher filed a motion for summary judgment, which was overruled on October 20, 2008. (Doc. Nos. 208, 220).
 {¶ 19} On November 1, 2008, a final pre-trial was held between Irmscher's counsel, appellants' counsel, and the trial court. During this meeting, Irmscher orally moved for summary judgment, which the court appeared inclined to grant. On November 3, 2008, a hearing on the motion was held, and, on November 13, 2008, the trial court filed its entry granting summary judgment in Irmscher's favor. (Doc. No. 249).
 {¶ 20} On December 9, 2008, appellants filed their notice of appeal. (Doc. No. 250). Appellants now appeal asserting two assignments of error for our review. We will address appellants' assignments of error out of the order they appear in their brief, following our discussion of the applicable standard of review. *Page 9 
 II. Standard of Review {¶ 21} An appellate court reviews a grant or denial of summary judgment pursuant to Civ. R. 56(C) de novo. Wampler v. Higgins (2001),93 Ohio St.3d 111, 127, 752 N.E.2d 962, citing Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. To prevail under Civ. R. 56(C), a party must show: (1) there are no genuine issues of material fact; (2) it appears from the evidence that reasonable minds can reach but one conclusion when viewing evidence in the nonmoving party's favor, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Shaffer, 90 Ohio St.3d at 390; Grafton, 77 Ohio St.3d at 105.
 {¶ 22} Material facts have been identified as those facts "that might affect the outcome of the suit under the governing law." Turner v.Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 24891 L.Ed.2d 202, 106 S.Ct. 2505. "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present "a sufficient disagreement to require submission to a jury" or is it "so one-sided that one party must prevail as a matter of law[?]" Id., citing Liberty Lobby, Inc.,477 U.S. at 251-52. *Page 10 
 {¶ 23} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. Perez v. Scripts-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." Lakota Loc. SchoolsDist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637, 643,671 N.E.2d 578.
 III. Analysis ASSIGNMENT OF ERROR NO. II THE COURT ERRED IN GRANTING IRMSCHER'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT CREDIT WAS EXTENDED BY PLAINTIFFS ONLY TO IRMSCHER INDIVIDUALLY AND NEVER TO ANY PARTNERSHIP, ACTUAL OR APPARENT.
 {¶ 24} In their second assignment of error, appellants argue that the trial court erred in finding that credit was extended to Irmscher, individually, and never to any partnership, actual or apparent, until August 16, 1994, the closing date. Specifically, appellants argue that several articles in the Daily Standard newspaper stated that Fanning Howey was Irmscher's partner. The first article was published on March 25, 1993, prior to when any option was signed; and therefore, we can infer that the landowners executed the options based on the newspaper article's representation of a partnership, argue appellants. Appellants further assert that they extended their options on March 15, 1994 (Roses on March 18, *Page 11 
1994) on the basis of Irmscher's representation at the March 9, 1994 meeting that Fanny Howey, Knapke, Samples, and he, all individually, were Lakewood's general partners.
 {¶ 25} Irmscher argues that appellants have misconstrued the trial court's judgment to find that credit was extended to him when, really, the trial court only found that credit was not extended to Lakewood, actual or apparent, on March 15, 1994 (Roses on March 18th), when the landowners extended their options. Irmscher argues that the option agreements specifically provided that he was to have no personal liability on the notes; and therefore, the landowners could not have extended credit to him. Irmscher also points out that the Howicks had asked for an extension of personal credit, but were informed by his attorney that he would not be assuming personal liability on any of the notes. We agree that appellants have misconstrued the trial court's ruling.
 {¶ 26} In its summary judgment entry, the trial court stated the following:
 The Court agrees with Irmscher that credit was not extended to Lakewood Village Limited Partnership, actual or apparent, or to an apparent partnership consisting of John Irmscher, Thomas Knapke, Fanning Howey, Inc., and Chuck Samples until the date of closing and the issuance of the promissory notes to plaintiffs by Lakewood Village Limited Partnership on August 16, 1994. Insomuch as the agreements to extend their respective option agreements were to Irmscher individually, Plaintiffs did not, in any event, extend credit to any partnership on March 15, 1994, (Rose on March 18, 1994). *Page 12 
(Nov. 13, 2008 JE, Doc. No. 249). The trial court's judgment entry did not state, as appellants argue, that credit was extended to Irmscher, individually; rather, the trial court's entry states that the option agreements were between the landowners and Irmscher, individually. Appellants infer that credit was given to Irmscher from the trial court's conclusion that the option agreements were between the landowners and Irmscher, individually. That inference is reasonable but not necessary, and incorrect. Strictly speaking, the trial court only found that credit was not extended to any partnership, apparent or actual, when the options were executed, nothing more and nothing less.
 {¶ 27} Therefore, appellants' second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. I THE COURT ERRED IN GRANTING IRMSCHER'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT CREDIT WAS EXTENDED BY PLAINTIFFS ON THE DATE OF CLOSING, AUGUST 16, 1994, AND THAT R.C. 1782.15, AS AMENDED ON JULY 1, 1994, GAVE PLAINTIFFS CONSTRUCTIVE NOTICE THAT THE GENERAL PARTNERS OF LAKEWOOD VILLAGE LIMITED PARTNERSHIP WERE NOT JOHN IRMSCHER, FANNING/HOWEY ASSOCIATES, INC., TOM KNAPKE, NOR CHUCK SAMPLES.
 {¶ 28} In their first assignment of error, appellants argue that this Court has already addressed the relationship between the versions of R.C. 1782.15 before and after July 1, 1994. Appellants argue that at the "crucial point in time as to knowledge" was when they decided to extend their options, March 15, 1994 *Page 13 
(Roses on March 18th), and the version of R.C. 1782.15 in effect then only provided notice of Lakewood's limited partners, not its general partners. Appellants argue that credit was extended to the apparent partnership of Lakewood when they decided to extend their options because they were bound by the options' terms, including terms of credit, when they signed the extension agreements. Appellants further argue, apparently in the alternative, that R.C. 1782.15's constructive notice was insufficient and that actual notice was required.
 {¶ 29} Irmscher argues that the trial court correctly determined that credit was extended when Lakewood issued the promissory notes to appellants on August 16, 1994, the closing date. Irmscher argues that credit is given when a debt is incurred and payment therefor is deferred, and the debt here was incurred when the promissory notes were executed by Lakewood and given to appellants on August 16, 1994. Irmscher further argues that appellants could not have extended credit to Lakewood, actual or apparent, because Lakewood was not a party to the original option agreements or extension agreements. Accordingly, Irmscher argues that Lakewood incurred no debt when the options or extensions were executed. Irmscher also argues that the version of R.C. 1782.15 in effect July 1, 1994, six weeks prior to closing, provided appellants with constructive notice that Lakewood's general partners were corporations, not individuals. *Page 14 
 {¶ 30} To survive a motion for summary judgment on a partnership by estoppel claim, appellants must demonstrate genuine issues of material fact on the following three elements:
 (1) a person represents himself as a partner or consents to another representing him as a partner; (2) a person * * * to whom such representation has been made relies on this representation; and (3) based on this reliance, the claimant gives credit to the apparent partnership.
Howick, 2007-Ohio-4370, at ¶ 55, citing Fiberized Prod., Inc. v.Crocker (Apr. 15, 1993), 10th Dist. No. 92AP-975; Rivercrest Farm, Inc.v. Taber (June 10, 1998), 3d Dist. No. 1-97-68, at *4, citingCrocker, 10th Dist. No. 92AP-975. Accordingly, partnership by estoppel has three prongs: a misrepresentation prong (prong one); a reliance prong (prong two); and a credit prong (prong three). In addition, a claimant's reliance must be in good faith following the exercise of reasonable diligence. Pride of Lima Provision Co. v. Sugar CreekFarms (June 15, 1981), 3d Dist. No. 2-80-35, at *4, citing 13 Ohio Jur. 3rd p. 101, Business Relationships, par. 974. See, also, 13 Ohio Jurisprudence 3d (2009), Business Relationships, Section 1161 (noting that claimant must exercise due diligence and have a "reasonable ground" for believing that the person is a member of the partnership or, in other words, act in good faith); 59A American Jurisprudence 2d Partnership (2009), Section 439 ("Good faith is also frequently imposed as an element of detrimental reliance on a partnership holding out."). *Page 15 
 {¶ 31} In Howick I, this Court was presented with the issue of whether or not appellants had demonstrated genuine issues of material fact sufficient to overcome summary judgment with respect to partnership by estoppel's reliance prong (prong two), because the trial court granted summary judgment finding that appellants' reliance was unjustified.2007-Ohio-4370, at ¶ 54; (June 30, 2006 JE, Doc. No. 169). While this Court recognized the rule of reasonable diligence, we, nonetheless, found that whether appellants' reliance was justified under the circumstances of that particular case was for a trier of fact to determine. Id. at ¶ 56. In discussing appellants' case with respect to the reliance prong, this Court stated:
 Appellants also provided evidence that if some of them had known that Irmscher, Knapke, Samples, and Fanning/Howey were not making a personal commitment to the project, they would have never sold their family farm. Additionally, Appellants indicated that they relied on the four newspaper articles, which indicated that Irmscher, Knapke, Fanning/Howey, and Samples were going to be general partners in Lakewood, when they decided to extend their respective agreements.
Id. at ¶ 57. Assuming all this to be true, we found that the evidence was sufficient to withstand summary judgment and reversed. Id. at ¶ 58.
 {¶ 32} Following our remand, the matter was set for trial. However, during the November 2008 final pre-trial, Irmscher moved for summary judgment on a different basis than he had in his original October 2005 motion — namely, that appellants could not establish, as a matter of law, that they extended credit based *Page 16 
on their reliance (prong three). (Doc. No. 118); (Nov. 3, 2008 Tr. at 6). The trial court agreed and granted summary judgment. Consequently, the question of law in this appeal is different and independent of that presented in Howick I.
 {¶ 33} In Howick I, this Court was presented with the issue of whether the trial court's grant of summary judgment on the basis that appellants' reliance was unjustified was appropriate under facts and circumstances of that case. Here, however, we are concerned with the legal relationship between partnership by estoppel's reliance prong (prong two) and partnership by estoppel's credit prong (prong three). Specifically, we are concerned with whether appellants gave credit to the apparent partnership based on their reliance that Fanning Howey, Irmscher, Knapke, and Samples, all individually, were Lakewood's general partners. Since the matter never proceeded to trial following our remand, the factual issue of whether appellants' reliance was justified has not yet been decided. However, the inquiry at bar is a question of law and, thus, this factual issue is irrelevant to our disposition here.
 {¶ 34} As this Court has previously noted, to establish a partnership by estoppel the claimant must show "a causal connection with the issuance of credit by the [claimant] sufficient to justify a finding that the [claimant] relied upon the representation * * *." Pride of LimaProvision Co., 3d Dist. No. 2-80-35, at *6. See, also, Crocker, 10th Dist. No. 92AP-975, at *1 ("(3) based on this reliance, *Page 17 
the claimant gives credit to the apparent partnership") (emphasis added). In order to determine whether a causal connection between appellants' possible reliance and their extension of credit exists, we must determine when appellants extended credit. When appellants extended credit determines which version of R.C. 1782.15 applies, and thereby, appellants' notice at the time they extended credit. Notice, in turn, determines what appellants relied upon, actually or constructively, when they extended credit; and thus, determines whether a causal connection exists between appellants' extension of credit and alleged reliance.
 {¶ 35} The trial court reasoned that appellants did not extend credit to Lakewood, actual or apparent, or to an apparent partnership consisting of John Irmscher, Thomas Knapke, Fanning and Howey Inc., and Chuck Samples until the August 16, 1994 closing when Lakewood issued promissory notes to appellants. (Nov. 13, 2008 JE, Doc. No. 249). The trial court further found that R.C. 1782.15 was amended effective July 1, 1994, and, as a result, appellants had constructive notice of Lakewood's general partners on August 16, 1994, the date appellants extended credit. Accordingly, the trial court reasoned that appellants could not have relied upon the alleged misrepresentation when they extended credit, as a matter of law; and therefore, summary judgment was appropriate on this basis. We agree. *Page 18 
 {¶ 36} "Credit" was not defined in the prior version of Ohio's Uniform Partnership Law nor has this Court found any definition of "credit" in the current version of the law. Crocker, 10th Dist. No. 92AP-975, at *3; R.C. 1775.01; R.C. 1776.01. Both parties have supplied potential definitions of "credit" to this Court. Appellants have provided the definition of credit used by the Court in Crocker, which was gleaned from Consumer Credit Code Section 1.301(16) and R.C. 4112.021(A)(1), and provides: "* * * the right granted by a creditor to a person to defer payment of a debt, or to incur debt and defer its payment, or purchase property or services and defer payment therefor." 10th Dist. No. 92AP-975, at *3. Irmscher has provided a definition of credit from Section 202.2(j), Title 12, C.F.R., which is substantially similar to that provided by the Court in Crocker. Since this Court relied uponCrocker in Howick I and the parties essentially agree onCrocker's definition of credit, we will apply the Crocker definition here.
 {¶ 37} Applying that definition, appellants argue that credit was given at the time they extended their option agreements (March 15, 1994) (Roses on March 18th), because, in the options, they granted the apparent partnership the right to defer payment for their property by issuing a promissory note. This argument lacks merit. Appellants over-emphasize the first portion of the Crocker definition, that credit is a "right granted," to reach their conclusion that credit was given when they extended their options. The remaining portion of theCrocker *Page 19 
definition requires that the person to whom credit is given incur a debt, receive a service, or, as in this case, "purchase property." 10th Dist. No. 92AP-975, at *3. "An option to purchase or sell real estate is not a contract to purchase or sell real estate, because the optionee has the right to exercise, that is, to accept or reject the offer made according to the terms of the agreement and is not bound by it." 80 Ohio Jurisprudence 3d (2008), Real Property Sales and Exchanges, Section 15, citing Plikerd v. Mongeluzzo (1992), 73 Ohio App.3d 115, 596 N.E.2d 601. Accordingly, neither Irmscher, personally, nor any partnership, actual or apparent, purchased the property or incurred a debt by virtue of executing the option extension agreements. Therefore, we cannot say that appellants extended credit by signing the options.
 {¶ 38} Appellants further argue that credit was extended by virtue of the fact that they were bound by the options' terms of credit at the time of execution. Appellants' argument lacks merit. As the Court inRitchie v. Cordray explained:
 An option is an agreement to keep an offer open for a specified time; it limits the customary power of an offeror to revoke his offer prior to its acceptance. See George Wiedemann Brewing Co. v. Maxwell (1908), 78 Ohio St. 54, 84 N.E. 594; Restatement of the Law 2d, Contracts (1981) 73-74, Section 25. In the ordinary real estate option contract, the seller offers to sell his real property upon fixed terms, and he and his prospective buyer agree that, in exchange for a consideration paid by the buyer, the seller will leave his offer open for a specified time. Within this context, the option contract is not a contract to buy and sell the property, but only a contract whereby the seller agrees to leave his offer to sell open for a time-certain. Confusion often *Page 20 arises since the option is combined with the main offer to sell and its attendant detailed terms.
 However, the two are separate and independent, even though found in one document; the option is collateral to the main offer to sell. The main offer does not become a contract to buy and sell unless and until its terms are accepted. The option, on the other hand, is already a binding complete contract to leave the offer open-there has been both offer and acceptance, supported by consideration. See Sause v. Ward (1917), 7 Ohio App. 446, at 450-451.
(1983) 10 Ohio App.3d 213, 215, 461 N.E.2d 325. The language of the options executed sub judice contains both the main offer to sell and the collateral option contract. (See e.g. Ex. 24). For example, the Howicks' option provided that "[o]ptionors grant unto Optionee [Irmscher] an irrevocable option and right to acquire (the "Option"), under the terms and conditions hereinafter set forth, the Premises." (Id. at 2, § 1, GRANT OF OPTION). The option expired on April 30, 1994. (Id.). In consideration for the option, the Howicks acknowledged the receipt of $6,000 for the prior option, executed on August 14, 1990, and $2,000 for the new option. (Id.). The option, an offer to sell upon fixed terms within a specified time, supported by consideration, was a binding complete contract between the parties at the time of execution.Plickerd, 73 Ohio App.3d at 122-23 (noting an option's essential elements and consideration requirement); Ritchie, 10 Ohio App.3d at 215. The options' language, however, also provided the terms of the main offer to sell. Included among the terms of the main offer to sell was that *Page 21 
"Optionee shall deliver to Optionors a promissory note (the "Note") executed by the corporation or partnership formed by Optionee to acquire title to the Premises * * *." (See e.g. Ex. 24, at 3, § 5D). Since the credit terms were part of the main offer to sell, not the option contract, they were not binding upon appellants (optionors) until accepted by Irmscher (optionee). Ritchie, 10 Ohio App.3d at 215. Therefore, contrary to their assertions, appellants were not bound by the terms of credit in the options' main offer to sell. Id. As such, appellants' argument that they extended credit on March 15th (Roses on March 18th) by virtue of this fact is meritless.
 {¶ 39} We agree with the trial court and Irmscher that credit was given to the partnership on the closing date, August 16, 1994, when appellants' accepted the promissory notes in partial payment for their land. At that point, there was an exchange of credit for a debt, a deed for a note. It was at that point that the partnership, actual or apparent, "incur[ed] debt and defer[ed] its payment, or purchase[d] property * * * and defer[ed] payment therefor." Crocker, 10th Dist. No. 92AP-975, at *3. It was also at that point, following Irmscher's exercise of the option on July 11, 1994, [1] that appellants were bound by the terms and *Page 22 
conditions of the options' main offer to sell, including terms of credit.[2] Accordingly, we find that appellants gave credit to the partnership, actual or apparent, on the closing date of August 16, 1994.
 {¶ 40} Now that we have determined that appellants gave credit on August 16, 1994 for purposes of partnership by estoppel's third prong, we must now determine whether appellants gave credit based on theirreliance that Lakewood's general partners were Irmscher, Fanning 
Howey, Knapke, and Samples, all individually. The trial court found that appellants did not give credit based on their reliance because on August 16, 1994, the date appellants extended credit, R.C. 1782.15, as amended effective July 1, 1994, gave appellants constructive notice that Lakewood's general partners were Irmscher Development, Inc., not John Irmscher, individually; F/H Investments, Inc., not Fanning Howey Associates, Inc.; Knapke Associates, Inc., not Thomas Knapke, individually; and Samples Associates, not Chuck Samples, individually. (Nov. 13, 2008 JE, Doc. No. 249). We agree.
 {¶ 41} In our prior opinion, we noted that the version of R.C. 1782.15
in effect at the time of Lakewood's filing did not provide appellants notice of Lakewood's general partners, only its limited partners.Howick, 2007-Ohio-4370, *Page 23 
at ¶ 50. Our statement was and is correct, but it should be read in the context of our prior opinion, which dealt with whether appellants' reliance was justified, not whether appellants extended credit based on their reliance. The version of R.C. 1782.15 in effect at the time appellants extended credit provided, in pertinent part:
 The fact that a certificate of limited partnership is on file in the office of a county recorder or with the secretary of state is notice that the partnership is a limited partnership and that the persons designated in the certificate as general partners are general partners . It is not notice of any other fact.
R.C. 1782.15 (S.B. 74, eff. 7-1-94) (emphasis added). Thus, at the time of the August 16, 1994 closing, when appellants extended credit, Lakewood's certificate of limited partnership provided appellants constructive notice of its general corporate partners, as the trial court found.
 {¶ 42} Appellants argue that constructive notice was insufficient because the general partners were changed and substituted by corporations. In support of their proposition of law, appellants point to State v. Beehive Ltd. Partnership (1993), 89 Ohio App.3d 718,627 N.E.2d 592 and Baltzell-Wolfe Agencies, Inc. v. Car Wash InvestmentsNo. 1, Ltd. (1978), 58 Ohio App.2d 70, 389 N.E.2d 517.
 {¶ 43} These cases are easily distinguishable. Aside from the fact that Beehive was a criminal case, the contract which gave rise toBeehive's criminal liability explicitly prohibited the assignment by any general partner of his/her interest in the agreement without prior written consent. 89 Ohio App.3d at 724. *Page 24 
Unlike the contract in Beehive, the option agreement sub judice did not expressly provide any prohibition on assignments; rather, the options expressly provided that appellants would convey all title to a corporation or partnership formed by the optionee. (See e.g. Joint Ex. 24, at 2, § 5A). Furthermore, Beehive dealt with the prior version of R.C. 1782.15, which only provided notice of the limited partners.89 Ohio App.3d at 727. Accordingly, we find Beehive distinguishable from this case.
 {¶ 44} Batzell-Wolfe is also distinguishable. In that case, Batzell-Wolfe sold insurance policies to Car Wash Investments No. 1, Ltd., Car Wash Investments No. 2, Ltd., and Auto Wash and Fuel.Batzell-Wolfe, 58 Ohio App.2d at 71. At the time Batzell-Wolfe sold the policies, the three limited partnerships' general partners were individuals. Id. However, around January 1, 1976, the general partners withdrew and Chapel Management Co., a corporation with which they were associated, was substituted as the sole general partner. Id. The limited partnerships failed to pay insurance premiums during 1976, so Batzell-Wolfe brought suit against the partnerships and the original general partners, individually. Id.
 {¶ 45} The referee recommended that, since plaintiff extended credit to the limited partnerships prior to the withdrawal of the individual partners as general partners and the substitution of Chapel Management, plaintiff was entitled to *Page 25 
actual notice of the substitution. Id. Furthermore, the referee found that since no actual notice was given, the individual partners continued to be liable as general partners for plaintiff's extension of credit to the partnerships. Id. Objections to the report and recommendation were overruled by the trial court, and it granted judgment against the partnerships and the individual partners. Id.
 {¶ 46} On appeal, defendant-partners argued that the filing of their amended certificates of limited partnership gave plaintiff constructive notice that they were no longer general partners. Id. at 72. The Court of Appeals for the Tenth District did not dispute that the filing gave constructive notice, but stated that the issue before it was whether plaintiff was entitled to actual notice. Id. In reaching its decision, the Court noted that no applicable revised code section applied; and therefore, the rules of law and equity governed. Id. at 73, citing R.C. 1775.04. The Court, then, however, turned to R.C. 1775.34, which provided for partnership liability by a partner following dissolution, and held:
 where credit is extended to a limited partnership after a change of general partners by a creditor having no notice or knowledge of such change of general partners, and who had extended credit to the partnership prior to such change, the withdrawing general partners are liable to the creditor for such credit extended despite the substitution of a new general partner.
Id. at 74 (emphasis added). The Court, thus, rejected defendant-partners' argument that constructive notice by filing was sufficient to avoid liability for plaintiff's continuation of credit. Id. at 75. *Page 26 
 {¶ 47} Appellants' application of Batzell-Wolfe is misplaced for several reasons. To begin with, no actual change in general partners occurred sub judice like in Batzell-Wolfe. No individual partners of Lakewood ever withdrew, nor was the filed certificate of limited partnership ever amended to substitute corporations. Furthermore, as we have already found, appellants extended credit on August 16, 1994. Appellants allege that a change in partners, from individuals to corporations, occurred between the time they executed the option extension agreements (March 15th) (Roses on March 18th) and closing (August 16, 1994). Consequently, appellants did not give creditprior to the change in partners, which the rule inBatzell-Wolfe requires. 58 Ohio App.2d at 74. Aside from these reasons, we are not persuaded that Batzell-Wolfe's equitable rule should apply in this case since appellants had notice throughout the negotiations that Irmscher would assign the options to a partnership or corporation. Thus, we find Batzell-Wolfe distinguishable from this case.
 {¶ 48} Since actual notice was not required by the express language of the options, as the contract in Beehive, or by operation of law or equity, as the Court in Batzell-Wolfe found, we find that R.C. 1782.15's constructive notice was sufficient to inform appellants that Lakewood's general partners were the corporations listed on its filed certificate of limited partnership. *Page 27 
 {¶ 49} The next issue we must decide is: what effect does R.C. 1782.15's constructive notice have upon appellant' partnership by
estoppel claim? The trial court concluded that summary judgment in Irmscher's favor was appropriate because appellants had constructive notice that Lakewood's general partners were corporations, pursuant to R.C. 1782.15, prior to extending credit. (Nov. 13, 2008 JE, Doc. No. 249). We agree.
 {¶ 50} As we noted earlier, partnership by estoppel's credit prong is not established simply because a claimant extends credit. Rather, the claimant must extend credit based on his/her reliance that a person is a partner. Crocker, 10th Dist. No. 92AP-975, at *1. In other words, the credit prong requires a causal connection between the claimant's reliance and extension of credit. Pride of Lima Provision Co., 3d Dist. No. 2-80-35, at *6. Appellants demonstrated operative facts showing a causal connection between their reliance on the alleged misrepresentations made in the newspaper articles and during the March 9, 1994 meeting and their execution of the option extensions. However, appellants cannot, as a matter of law, establish a causal connection between their reliance on these misrepresentations and their extension of credit on August 16, 1994, because, on July 1, 1994, R.C. 1782.15's constructive notice broke the causal connection. As of July 1, 1994, appellants could no longer establish, as a matter of law, that they extended credit based on their reliance that Irmscher, Fanning Howey, Knapke, *Page 28 
and Samples, all individually, were partners. Any alleged misrepresentations were, in effect, cured by R.C. 1782.15's constructive notice. For this reason, appellants cannot establish a partnership by estoppel claim as a matter of law. Accordingly, the trial court's grant of summary judgment was appropriate.
 {¶ 51} Appellants' first assignment of error is, therefore, overruled.
 IV. Conclusion {¶ 52} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 SHAW, J., concurs.
[1] To exercise the options Irmscher was required to provide written notice to appellants of such exercise either by hand delivery or by depositing it in the U.S. mail. (See e.g. Joint Ex. 24, at 2, § 4, EXERCISE OF OPTION). In our prior opinion, we noted that Irmscher exercised the options in July 1994, without specifying the date.Howick, 2007-Ohio-4370, at ¶ 14. This Court has not located any written notice in the record; however, according to appellants' attorney, Irmscher exercised the options on July 11, 1994. (Nov. 3, 2008 Tr. at 11).
[2] The Court notes that even if we agreed with appellants that credit was given when they became bound by the main offer's terms and conditions, when Irmscher executed the options on July 11, 1994, R.C. 1782.15's constructive notice was effective July 1, 1994. Consequently, this earlier date does not aid appellants' case.